## Copley Cement Mfg. Co., Appellant, *v.* The Public Service Commission.

*Public Service Commission—Public service companies—Rates—Increased rates—Complaints—Second increase—Pending hearing on complaint—Validity—Power of Public Service Commission to order.*

A public service company which has filed a schedule of increased rates with the Public Service Commission, against which complaint has been filed within thirty days, cannot file another schedule further increasing its rates, until it has discharged the burden of establishing the reasonableness of the first increase or secured the permission of the Public Service Commission to file such new schedule.

In such case, the Public Service Commission has authority to order the company to continue to render service at the original rate under investigation, pending the determination and action of the commission.

Argued March 16, 1921. Appeal, No. 16, Oct. T., 1921, by Coplay Cement Manufacturing Company, from order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket, No. C. 3698, 1920, in the case of Coplay Cement Manufacturing Company v. The Public Service Commission of the Commonwealth of Pennsylvania, and Pennsylvania Power & Light Company, intervening appellee. Before ORLADY, P. J., PORTER, HENDERSON, KELLER and LINN, JJ. Reversed.

Complaint against increased schedule of rates filed by Pennsylvania Power & Light Company, successor to Lehigh Navigation Electric Company.

From the record it appeared the Pennsylvania Power & Light Company filed and published a new schedule on September 15, 1919, effective October 15, 1919, providing for an increase of rates. Within 30 days of such filing the complainant filed its complaint against this schedule, alleging that the rates fixed therein were excessive, unjust and unreasonable. Hearings were held on this complaint by the Public Service Commission and, while the matter was pending and undetermined, and without first obtaining permission of the Public Service Commission, the defendant company filed and published another schedule further increasing its rates. The plaintiff again entered a complaint against the second increase and filed its petition with the Public Service Commission praying for an order directing the defendant company to continue furnishing service at the original rate under investigation. The commission dismissed this petition on the ground that it was without jurisdiction to make the order prayed for. Plaintiff appealed.

*Error assigned,* among others, was the order of the commission.

*David Wallerstein,* and with him *Abraham Israel,* for appellant.—Under the Public Service Company Law a public service company cannot file and make effective a new schedule of rates while a contest is pending over a prior increase: Meadville v. Northwestern Pennsylvania R. R. Co., P. U. R. 1919 F. 637, 21 Corpus Juris, sec. 227, p. 1223; Frick v. Duquesne Light Co., 9 Pa. Corp. Rep. 168, 174; Osborne v. The Town Co., 178 U. S. 22; Public Service Comm. v. Iroquois Natural Gas Co., P. U. R. 1918 E. 419; City of Reading v. Reading Transit & Light Co., 9 Pa. Corp. Rep. 217.

*Berne H. Evans* and *Ralph J. Baker,* and with them *Thomas J. Perkins,* for intervening appellee.—A published or posted rate may be changed either by the commission determining a new rate or by the company publishing, posting and filing a schedule containing a new rate: Suburban Water Company v. Oakmont, 268 Pa. 243; New York & Pennsylvania Company v. New York Central R. R. Co., 267 Pa. 64.

*John Fox Weiss,* assistant counsel, for the Public Service Commission.

OPINION BY KELLER, J., April 18, 1921:

The questions raised by this appeal are: (1) When a public service company has filed a new schedule increasing rates, and before its effective date complaint is made that the rates are excessive and unreasonable, may the company, pending the investigation by the Public Service Commission into the reasonableness of the rates fixed in such schedule, and without the permission of the commission, file another schedule or schedules still further increasing the rates under investigation? (2) Has the Public Service Commission jurisdiction to order the company to continue to collect the rates fixed in the schedule complained against pending the determination of such investigation?

The facts out of which these questions arise are as follows: During the years 1917 and 1918 the intervening appellee, (hereafter called Power Company), duly increased its rates several times without objection from its patrons. On September 15, 1919, it filed, posted and published a new schedule, referred to as schedule P-2, effective October 15, 1919, making a further increase. Within thirty days of such filing, on October 11, 1919, appellant, (hereafter called Cement Company), filed its complaint against schedule P-2, alleging that the rates fixed therein were excessive, unjust and unreasonable. An investigation was begun on this complaint by the

commission and on September 1, 1920, while it was pending and undetermined, and without any application to or permission from the commission, Power Company filed, posted and published another schedule, referred to as schedule P-18, still further increasing the rates fixed in schedule P-2, and announced that the new rates would become effective on October 1, 1920. Within thirty days of such filing, to wit, September 21, 1920, Cement Company filed its complaint against schedule P-18, alleging that the rates were excessive, unreasonable and in violation of the Public Service Company Law, and on October 8, 1920, filed its petition with the commission praying for an order directing Power Company to continue to furnish electric current to Cement Company at the rates fixed in schedule P-2, until the matters under investigation should be determined by the commission. The commission dismissed the petition on the ground that it was without jurisdiction to make the order prayed for.

The subject may be clarified by eliminating certain matters which are not in issue.

The appellant does not dispute the right of a public service company generally to initiate rates; the commission may either on complaint filed or on its own motion investigate rates and determine the maximum just and reasonable rates to be thereafter charged, but the company must first fix, file and publish, in the manner provided by law, the schedule of rates to be paid by its customers.

Nor does the appellant contend that when a public service company has lawfully filed, posted and published a new schedule of rates, in accordance with the provisions of the Public Service Company Law, the commission has power to suspend its operation pending hearing and investigation following complaint as to its reasonableness; for the act clearly directs otherwise.

But the question is, whether after a company has initiated a new schedule of rates, and before it becomes

effective, complaint is made that they are excessive and unreasonable, and the burden is therefore cast on the company of proving them to be fair and reasonable, and while these new and questioned rates are being collected by the company under the provisions of the act, pending an investigation into their reasonableness, and before the commission has decided that the company has discharged the burden resting upon it and that the rates are reasonable, the company may lawfully file, post and publish new and higher rates and make them ipso facto effective thirty days thereafter, without the consent or permission of the commission.

The intervening appellee claims that this power is expressly given it by article II, section 1, clause (f) of the Public Service Company Law, but an examination of this paragraph fails to disclose any such authority. The language prohibits rather than grants; it confines rather than enlarges the powers of public service companies. "It shall be the duty of every public service company ......to make no change in any tariff or schedule, which shall have been filed or published or posted by any public service company in compliance with the preceding sections, except after thirty days' notice to the commission and to the public, posted and published in the manner, form, and places required with respect to the original tariffs or schedules, which shall plainly state the exact changes proposed to be made in the tariffs or schedules then in force and whether an increase or decrease, and the time when the proposed changes will go into effect; and all such changes shall be shown by filing, posting, and publishing new tariffs or schedules, or shall be plainly indicated upon the tariffs or schedules in force at the time, and kept open to the public inspection: Provided, that the commission may, in its discretion and for good cause shown, allow changes in such tariffs or schedules upon less than thirty days' notice herein specified, or upon other conditions: And provided, further, that no rate, practice, or classification which shall have been

determined by the commission shall be changed or discontinued by the public service company, directly or through any change in classification, rules, regulations, contracts, or practices, within a period of three years after such determination, without application to and the approval of the commission, of which application thirty days' prior notice shall be given in the said tariffs or schedules to the public: And provided further, that it shall be the duty of every public service company, when required by the commission, to issue to its shippers, consumers, or other patrons a certificate or other evidence of payments made by them to it in excess of the prior established rate, of an increase in which rate notice has been given to the commission and the public as aforesaid."

Here is no grant of authority to a public service company to file a new schedule increasing rates while the burden is still resting upon it, unfulfilled, of showing that rates lately filed by it changing prior established rates are not excessive, unfair and unreasonable. On the contrary it forbids the company from changing rates at any time or under any circumstances, until it has gone through certain formalities and given notice thereof in the manner directed. For what purpose? So that within the time specified objection may be made by any parties affected thereby and opportunity be given for an investigation by the commission into the fairness and reasonableness of the new rates. Pending the decision of the commission the question of the reasonableness of the new schedule is undetermined and (if objection is filed within thirty days) the burden rests upon the company to satisfy the commission that the new rates are fair and reasonable and should be paid by its customers. It would be an anomaly indeed if while such investigation was still pending and while such burden was unsatisfied the company by ignoring the situation and proceeding as if no burden then rested upon it, could merely by filing, publishing and posting newer and higher rates,

interfere with, hamper or render to some extent abortive the pending investigation and make its customers pay still higher rates when it had not to that time satisfied the commission that it was justified in charging the rates then being investigated.

If under the practice in force before the passage of the Public Service Company Law a court of equity were investigating the fairness and reasonableness of a new schedule of rates, on bill filed alleging them to be excessive and unreasonable, and the company, without any application to or permission from the court filed and put into force a newer schedule still further increasing rates, it would have been considered a gross contempt of the court and been punishable as such. There is nothing in the Public Service Company Law which enlarges the powers of public service companies in this respect. The very pendency of an investigation into rates, with the burden resting on the company of establishing their fairness and reasonableness, prevents the company from filing another and higher schedule as long as that burden is not discharged, unless, under the broad powers of the commission, permission to file such newer schedule, (not to approve its rates), is first had and obtained. The commission may even, whenever it is satisfied that an advance in rates is justified, fix a temporary rate to be charged pending a determinate valuation of the company's property devoted to public use: City of Scranton v. Public Service Commission, 73 Pa. Superior Ct. 192. So here, the commission, if it had been satisfied from the evidence before it that the rates contained in schedule P-2 were justified, could on the petition filed by appellant, have fixed those rates as the rates to be charged until the completion of the pending investigation or for a fixed temporary period, or could even have fixed such temporary rates on a higher basis than schedule P-2, if satisfied that the evidence warranted such increase; that it did neither would seem to warrant the conclusion that it was not as yet satisfied that the burden on Power Company to prove that the rates fixed by schedule P-2

were fair and reasonable had been met, and that it was fairly entitled to charge those rates, much less to increase them.

Intervening appellee relies strongly on the case of Suburban Water Co. v. Oakmont Boro., 268 Pa. 243. Its facts were not at all like this case. There the water company filed a new schedule of rates increasing the amount to be paid by the borough over those fixed in a contract made before the passage of the Public Service Company Law. Complaint was made to the commission within thirty days after such schedule was filed. Pending the ensuing investigation the water company brought an action in assumpsit to collect the charges due by the borough under the new schedule and the Supreme Court held it could recover, but ruled that under the broad powers given the commission it could order the water company to give a bond, with approved security, to indemnify its patrons against loss if there was danger of the company's insolvency. It would be similar to the present case if Cement Company were resisting payment of the rates fixed by schedule P-2. The language in the opinion in that case as to the right of a public service company to change its rates by filing, posting and publishing a new schedule, must be read in connection with the facts involved and be limited to cases where complaints are not pending against existing rates, with the burden resting on the company of sustaining their reasonableness, for in the opinion Mr. Justice KEPHART makes use of an expression which is in exact accord with what we have before said. In speaking of the schedule filed by the water company, to which complaint was made and as to which the burden of upholding its reasonableness rested on the water company (similar in all respects to schedule P-2 in this case), he said: "It is the effective, collectible and suable rate, duly published as required by the act, and remains as such, governing the charges to be made pending the investigation, until the commission 'shall determine and prescribe by a specific order the maximum just, due, equal and rea-

sonable rate......to be thereafter established, demanded, exacted, charged or collected.' " [p. 250.]

Applying these words to the terms of the present appeal, schedule P-2 is the effective, collectible and suable rate and remains as such, governing the charges to be made pending the investigation, until—not until the company shall file, post and publish another schedule— but, until the commission shall determine and prescribe by a specific order the maximum just, due, equal and reasonable rates to be thereafter established, demanded, exacted, charged or collected. This means that schedule P-2 is the effective rate, and therefore the only collectible and suable rate, pending the investigation and that it governs and fixes the charges to be demanded, exacted or collected by Power Company until the commission shall determine and prescribe the maximum rates thereafter to be charged and collected, and that any other rate attempted to be established, charged or collected in the meantime is unlawful; and if unlawful it follows that the commission may order it to be discontinued.

We are, therefore, of opinion that Power Company could not, pending the investigation into the reasonableness of the rates of schedule P-2, and until it had discharged the burden resting upon it of establishing their fairness and reasonableness, increase its rates still further by filing, posting and publishing schedule P-18; that such attempted increase was unlawful and of no effect and that the Public Service Commission had jurisdiction to order Power Company to charge and collect the rates fixed by schedule P-2, until the commission should determine and prescribe the maximum just and reasonable rates to be thereafter established, demanded, exacted, charged or collected.

The order of the commission is reversed. Costs on this appeal to be paid by intervening appellee.

TREXLER, J., did not sit and took no part in this decision.