### BEAVER VALLEY WATER CO. v. DRISCOLL et al.

### No. 3393.

District Court, W. D. Pennsylvania.

July 7, 1939.

Joseph A. Beck, of Pittsburgh, Pa., and Homer H. Swaney, of Beaver Falls, Pa., for plaintiff.

Harry H. Frank, Edward Knuff, and Solomon Freedman, all of Harrisburg, Pa., for defendant.

Before MARIS, Circuit Judge, and GIBSON and SCHOONMAKER, District Judges.

MARIS, Circuit Judge.

The Pennsylvania Public Utility Commission on June 21, 1937 instituted an in-quiry and investigation upon its own motion into the fairness, reasonableness and justness of the rates charged by the Beaver Valley Water Company. The Commission included within the scope of the inquiry and investigation and the notice thereof given to the Water Company consideration of the imposition of temporary rates under the provisions of Section 310 (a) and (e) of the Pennsylvania Public Utility Law, 66 P.S.Pa. § 1150(a) and (e). Pursuant to notice testimony was taken by an examiner for the Commission on August 6, November 4, and December 10, 1937. A further hearing scheduled for January 27, 1938, was cancelled by the Commission in a letter dated January 10, 1938. On March 15, 1938, the Commission made its interim report and order in which under and pursuant to the provision of Sec. 310(a) of the Public Utility Law it prescribed temporary rates which would effect a reduction of $29,500 in the Water Company's annual gross operating revenues. No oral argument had been had or briefs filed with the Commission. On March 23, 1938, the Water Company filed a bill in equity in this court and secured a temporary restraining order from the court. This order was continued from time to time until the case came on for a preliminary hearing before three judges sitting pursuant to Sec. 266 of the Judicial Code, 28 U.S.C.A. § 380. The court thereupon concluded as a matter of law that the order of the Commission was unconstitutional. On June 23, 1938, the court issued a preliminary injunction restraining enforcement of the temporary rates. The case is now before us upon final hearing.

We are called upon to determine whether paragraphs (a) and (e) of Section 310 as applied in this case by the Commission are unconstitutional as authorizing the imposition of a confiscatory rate in violation of the due process clause of the Fourteenth Amendment, Const.U.S.C.A.; whether the Commission accorded the Water Company a hearing which satisfied the procedural requirements of that clause; and whether the rate fixed did in fact comply with the statutory requirement, assuming the latter to be valid.

Paragraphs (a) and (e) of Section 310 of the Pennsylvania Public Utility Act are set out in full below.[1] It was argued by

---

[1] "(a) The commission may, in any proceeding involving the rates of a public utility brought either upon its own motion or upon complaint, after reasonable notice and hearing, if it be of opinion that the public interest so requires, im-

the utility company in Driscoll v. Edison Power & Light Co., 59 S.Ct. 715, 83 L.Ed. —, that these provisions were unconstitutional because the Commission was empowered thereby to fix rates based solely upon depreciated original cost. The Supreme Court stated that this issue was not involved in that case since the Commission in fixing the temporary rates stated that it had considered all the factors for rate determination suggested in Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819. The question was left open as to whether a temporary rate is constitutional if, although based solely on depreciated original cost, there is statutory provision for recoupment by the utility company if the temporary rate is finally determined not to provide a fair return. That is the very issue now before us. The Commission here calculated the temporary rate base by deducting accrued depreciation from the total of the estimated original cost of the property used and useful in the public service, adding thereto working capital and material and supplies. It allowed a 6% return on this rate base.

■ The Water Company argues that it is entitled to a reasonable return on the value of its property used and useful in the public service and that in order to ascertain that value, not only the original cost but the amount and market value of its bonds and stock outstanding, the present as compared with the original cost of construction, and the probable earning capacity of the property under particular rates pre-

scribed by statute, as well as other factors must be considered. It is of course beyond dispute that in determining a final rate those and other elements must be considered by the legislature or the rate making body. Driscoll v. Edison Power & Light Co., supra. It is obvious, however, that if all these elements must be considered in fixing a temporary rate the case would be ripe for the fixing of final rates and the necessity for temporary rates would be at an end. It was this very situation which the Pennsylvania legislature intended to meet when it promulgated a formula for the fixing of temporary rates.

The Commission was authorized to base a temporary rate upon that one element, depreciated original cost, which was most readily ascertainable from the utility company's records. The only condition imposed was that the rates fixed should afford a return of not less than 5% of this value.

■ Such a formula for the making of what was called a temporary rate had, however, been declared unconstitutional in Prendergast v. New York Tel. Co., 262 U. S. 43, 43 S.Ct. 466, 67 L.Ed. 853. In that case the Supreme Court ruled that the rates there involved were erroneously termed temporary since during the period of their effectiveness they fixed the utility's return with finality. They were final legislative acts effective during a limited time. It followed that all the factors suggested in Smyth v. Ames, supra, should have been considered by the Commission in that case. The order of the Commission fixing tem-

mediately fix, determine, and prescribe temporary rates to be charged by such public utility, pending the final determination of such rate proceeding. Such temporary rates, so fixed, determined, and prescribed, shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property (when first devoted to public use) of such public utility, used and useful in the public service, and if the duly verified reports of such public utility to the commission do not show such original cost, less accrued depreciation, of such property, the commission may estimate such cost less depreciation and fix, determine, and prescribe rates as hereinbefore provided."

"(e) Temporary rates so fixed, determined, and prescribed under this section shall be effective until the final determination of the rate proceeding, unless terminated sooner by the commission. In

every proceeding in which temporary rates are fixed, determined, and prescribed under this section, the commission shall consider the effect of such rates in fixing, determining, and prescribing rates to be thereafter demanded or received by such public utility on final determination of the rate proceeding. If, upon final disposition of the issues involved in such proceeding, the rates as finally determined, are in excess of the rates prescribed in such temporary order, then such public utility shall be permitted to amortize and recover, by means of a temporary increase over and above the rates finally determined, such sum as shall represent the difference between the gross income obtained from the rates prescribed in such temporary order and the gross income which would have been obtained under the rates finally determined if applied during the period such temporary order was in effect."

porary rates in the case before us was not a final legislative act such as could operate to confiscate the Water Company's property in any permanent sense. Not only was it limited in time but it was temporary in its effect. This is so because of paragraph (e) of Section 310 which requires the Commission upon final determination of the rates to permit the Water Company to recoup its loss, through a temporary increase, if the final rates prove to be higher than the temporary rates. In this respect the case is clearly distinguishable from Prendergast v. New York Tel. Co., supra, which involved a temporary rate that was not subject to adjustment or recoupment.

In Bronx Gas & Electric Co. v. Maltbie, 271 N.Y. 364, 374, 3 N.E.2d 512, 514, the New York Court of Appeals upheld the constitutionality of a temporary rate provision of the New York law substantially similar to the Pennsylvania statute involved in this case. Chief Judge Crane, speaking of the effect of the Prendergast decision, said:

"After this decision the Legislature of the state of New York was confronted with this quære: Was it ever possible to compel public service corporations to charge reasonable rates, pending the long drawn-out and interminable proceedings to establish a fair return? The establishment of the proper base rate, or the present capital investment, upon which a company is entitled to a fair return, has become an intricate, involved, tedious proceeding, extending into months and years. Much of the evidence produced is expert testimony, varying in worth and uncertainty, presenting a maze of detail and figures. City of Louisville v. Cumberland Telephone & Telegraph Co., 225 U.S. 430, 32 S.Ct. 741, 56 L.Ed. 1151. . Without suggesting in any way that the public service corporations have not acted with utmost good faith, we can see the opportunity, as did the Legislature, for the intentional delay in these proceedings whereby unwarranted profits may be obtained. The fixing of a reasonable rate by these public service corporations, who enjoy from the public such valuable franchises, to be of any value, should be a matter of speedy regulation. The courts should not encourage such finesse in figuring as to make these hearings upon rate questions an obstruction instead of a relief. Of course, caution must be used on both sides, for the desire for improper gain is often-times as eager with the consumer, or his spokesman, as with the corporation."

In discussing the temporary rate provision of the New York law, the court said:

"The commission fixes a temporary rate pending the hearing. It is based upon the elements stated, which are not all of those required to fix a permanent rate. As before stated, this would be impossible, if we must consider in fixing a temporary rate all the elements required for the final rate: no temporary rate could ever be fixed. This also is self-evident. Therefore, to meet these conditions the temporary rate is fixed, within reasonable limits, upon figures which can be with some exactness obtained from the books of the company, showing original cost or investment; and if finally, when the proceeding ends, the temporary rate is proved to have been too low, the utility must be permitted and authorized to charge enough for its service to make up the loss. The consumer must pay what he should have paid, and the only way to do it is to fix a rate high enough to make up this loss.

"True it is that all the consumers paying the final rate, including the take-up, may not be the same as those who paid the temporary rate. A few consumers may be new customers paying what the old consumer should have paid. Such instances are of minor importance; the percentage must be very small. We can never work our institutions of government if we refine matters to such an extent that we have to consider all these little details. The Constitution expresses fundamental principles, and if in the main these have been observed, this is all that can be required. Besides, when we speak of the consumer—the customer—we mean the public, not individuals. San Diego Land & Town Co. v. Jasper, 189 U.S. 439, 23 S.Ct. 571, 47 L.Ed. 892.

\* \* \*

"This section, as we have said, forces the Public Service Commission to consider the returns from the temporary rate and to establish the permanent rate, or the final rate, accordingly; that is, if the temporary rate has proved to be too low, the final rate must make it up to the company. Over what time it is necessary to provide a rate sufficient to make up the loss, or to include the take-up, is a matter of adjustment, machinery, and method. These matters are all in the hands of the Public Service Commission, which may increase or modify a rate to meet the circumstances at any time."

726

We think that the reasoning of the opinion of the New York Court of Appeals in the Bronx Gas & Electric Co. case is sound and that it rules the present question. We accordingly hold that the order fixing temporary rates for the Water Company under the authority of paragraphs (a) and (e) of Section 310 of the Pennsylvania Public Utility Law was not a final legislative act which deprived the Water Company of its property in any final or permanent sense and that the statutory provisions referred to do not violate the due process clause of the Fourteenth Amendment as authorizing a rate the effect of which may be in law confiscatory.

The Water Company further contends that the interim order was made by the Commission in violation of the procedural protection afforded by the due process clause. It alleges that it was prevented from presenting pertinent testimony to the examiner when the Commission cancelled the January 27th hearing and that the interim order was made without giving it an opportunity to present its case upon written briefs and oral argument. It must be remembered that the protection offered by the due process clause is against the deprivation or confiscation of property. As we have shown the temporary rates prescribed by the Commission do not affect finally or permanently the rights of the Water Company in such fashion as to deprive that company of its property. We, of course, do not hold that temporary rates may be fixed by the Commission capriciously or arbitrarily and without regard to the minimum standard laid down in the statute. The record in this case, however, discloses that the Commission fixed the temporary rates upon the basis of original cost, less accrued depreciation, as the statute required, and allowed a return of 1% more than the statutory minimum. It determined this basis upon the final result of a prior rate proceeding of the Water Company and upon evidence offered at the hearings by the Water Company, which, in our opinion, provided ample support for the commission's findings. In fixing a rate which is truly temporary in its effect we think that the Commission need have before it merely sufficient evidence to furnish prima facie support for its findings. An analogy may be found in the right of a court of equity to issue an interlocutory injunction ex parte, such as was issued in this case. The procedural safeguards afforded by the due process clause will be fully available to the Water Company in the proceedings to determine the final rates.

It follows that the interlocutory injunction heretofore issued should be dissolved and the bill of complaint dismissed.