Philadelphia, Appellant, *v.* Pennsylvania Public
Utility Commission et al.

426

Argued October 8, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Abraham Wernick* and *G. Coe Farrier,* Assistant City Solicitors, with them *Frank F. Truscott,* City Solicitor, for City of Philadelphia, appellant.

*Charles E. Thomas,* with him *William M. Rutter* and *Samuel Graff Miller,* for Pennsylvania Public Utility Commission, appellee.

*Frederic L. Ballard,* with him *Hamilton C. Connor, Jr., Allen Hunter White* and *Ballard, Spahr, Andrews & Ingersoll,* for Philadelphia Transportation Company, intervenor.

OPINION BY HIRT, J., March 16, 1948:

In April 1946 Philadelphia Transportation Company filed a tariff supplement to its existing Bus and Rail rates to become effective on May 5, 1946. The company thus sought a general increase in its basic transportation fares, with some minor exceptions, from $7\frac{1}{2}$ to $8\frac{3}{4}$ cents; the increase in cash fares was from 8 to 10 cents. The Public Utility Commission on its own motion immediately started an investigation (at Docket No. C. 14133) to determine the fairness of the proposed rates, and the City of Philadelphia, in a separate proceeding, filed its complaint (at Docket No. C. 14134) against the proposed increases. Hearings before the commission began on June 25, 1946 and were held at frequent intervals thereafter. Twenty-five hundred pages of testimony and four volumes of exhibits attest to the thoroughness of the inquiry. On January 29, 1947, the commission found the proposed rates to be just and reasonable and made an order in each proceeding permitting the supplemental tariff to become effective on February 5, 1947, the date to which the operation of the new rates had been suspended by the commission. These are the appeals by the city from the orders of the commission. The city contends that there were errors, fundamental as well as procedural, which will make it necessary that the investigation and the complaint be referred back to the commission.

The two proceedings were consolidated by the commission, but only "for the purpose of making a common record useable in either proceeding". It was made clear that the commission's investigation and the city's complaint were to remain separate in all other respects. The city became apprehensive that the commission would not dispose of the issues in time to prevent the automatic operation of the tariffs on February 5, 1947, the end of the maximum periods of suspension under the law. And on December 24, 1946, the commission closed the complaint proceeding brought by the city at the insistence of

the city. The final hearing on the commission's investigation was held on January 23, 1947. On January 27, 1947, counsel for the company notified the commission by telegram of a new contract entered into by the company with Transport Workers Union, two days after the final hearing, by which the employees of the company secured a general wage increase of 13 cents per hour, beginning with February 11, 1947. At the company's request the commission made the telegram part of the record in its investigation proceeding and the commission considered the effect of the increased operating costs, resulting from the 1947 labor contract, in determining that the increases in rates proposed by the new tariffs were reasonable.

The city's case had been closed and there was no reason why the commission in its investigation could not waive formality in the proof of the 1947 labor contract. The city's contention that the admission of the telegram in evidence in the commission's case was error prejudicial to it, therefore is groundless. Increased costs of operation resulting primarily from prior increases in wages, which had become effective February 11, 1946, prompted the filing of the new tariffs here involved. The effect of the 1946 wage agreement was to increase operating expenses by $3,500,000 per annum. There was testimony at the hearing on January 9, 1947, and again on January 23, 1947 (subect to cross-examination by the city's counsel who according to the record was present on both occasions), that each additional increase of 1 cent per hour in the basic wage rate of employees of the company would further increase labor costs by $323,000 per year. The city must have appreciated the relevancy of this testimony. It had notice of the labor union's demand for additional general increases in employee wages of 30 cents per hour and knew that the 1946 wage contract would expire on February 10, 1947. Throughout the proceedings the prospect of further increased labor costs was in the offing and must have been within the con-

templation of all parties. Actually, the city was not prejudiced by the informal admission of proof of the 1947 labor contract nor by a consideration of it as one of the factors bearing upon the issues in the commission's inquiry. There can be no denial of the fact of an overall increase of 13 cents per hour by the 1947 labor contract nor that the increase had an important bearing on what the company justly was entitled to earn. The commission properly considered this evidence in its investigation and its order in that case necessarily controls the final order in the complaint proceeding brought by the city.

It is alleged that the commission erred in failing to make specific findings of fact in sufficient detail, to determine whether proper weight was given to the evidence by the commission; and further, that the record is fatally defective in that the commission did not find the *fair value* of the company's property nor determine definitely the allowable rate of return thereon. There is no merit in these contentions. The requirement of the law is that the commission shall make findings "in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence": Public Utility Law of May 28, 1937, P. L. 1053, art. X. §1005, 66 PS 1395. Cf. *Pa. P. & L. Co. v. P. S. C. et al.*, 128 Pa. Superior Ct. 195, 218, 193 A. 427; *Peoples Nat. Gas Co. v. P. U. C.*, 141 Pa. Superior Ct. 5, 12, 14 A. 2d 133. The purpose of the requirement is in aid of the court. The law was sufficiently complied with in this case; findings more detailed, and a definite finding of fair value, were not required under the circumstances. This is the first increase by the company in transportation rates since 1924. Unprecedented rider demand, due to peak employment in Philadelphia as well as gasoline rationing, reducing private transportation, made it possible for the company to earn an adequate return during the war years. But that era has passed and the city has not sug-

gested any method of operation by which the company, at the old rates, could absorb the increased operating cost of the 1946 wage agreement, with the addition of any part of expense imposed by the 1947 labor contract. The commission in effect found that a capitalization of the income available for return under the new rates, at any reasonable rate, will be less than the fair value of the company's property. That finding is clearly supported by all of the evidence. Where rates are imposed on a utility by the commission or where the commission finds new rates to be unreasonable or in violation of law a finding of fair value is essential. *Perkasie Sewer Co. v. Pa. P. U. C.,* 142 Pa. Superior Ct. 262, 16 A. 2d 158. But the law does not require such finding in every case. A determination of fair value was not necessary or desirable here, for the commission had sufficient evidence to act finally, without it. *Phila. et al. v. Pub. Ser. Com.,* 83 Pa. Superior Ct. 8; *New Street Bridge Co. v. Pub. Ser. Com.,* 271 Pa. 19, 38, 114 A. 378.

There was nothing superficial in the presentation of the city's complaint, or in the commission's inquiry, nor the company's proofs in meeting the burden upon it of sustaining the new tariffs. The issues were thoroughly tried from every relevant viewpoint. And the commission in its order indicates that it considered all competent testimony before it. The order discussed the company's evidence as to fair value; its estimates of accrued depreciation; its working capital requirements and its financial commitments on a new equipment and construction program as well as the evidence of operating costs. All items of revenue as well as of expense were fully established by the company and were not controverted. The commission considered the evidence of value presented by the city and evaluated it.[1] The com-

---

[1] Without implying estoppel, it is interesting to note the significance of the city's evidence bearing on fair value. The exhibit submitted by the city's engineer summarizes his contention that the value of the company's used and useful property is approximately

mission commented on the evidence of value adduced by its own witnesses and noted that it was a bring-down of testimony before us on a prior appeal. The commission gave consideration to the rate of return. It found that the net annual income available for return after income taxes, will amount approximately to $4,238,000 and noted: "This figure is equivalent to a return of . . . 6½% on $65,200,000". The opinion of the commission concluded with this statement: "Based upon a consideration of all the elements of fair value submitted of record, and assuming that respondent's estimate of revenue to be expected from the proposed rates will be borne out by experience; and taking into consideration the fact that respondent's operating labor costs will be increased in excess of $4,000,000, effective February 11, 1947, the Commission is of the opinion that the income available for return to be derived from the proposed rates will be within reasonable limits in relation to any finding of fair value which the Commission would be justified in making at this time. Accordingly, the Commission finds that the proposed rates are fair and reasonable and will permit them to become effective on February 5, 1947; . . ."

The fact that there is some minor variation in rates, particularly in zone fares applicable to suburban areas,

$75,000,000. This estimate represented the alleged original cost of construction or acquisition of the company's property, less purported depreciation reserves. The commission in its opinion and order indicated that additions would have to be made to the estimate, in this language: "In reaching this overall conclusion, however, the City's witness deducted as depreciation a surplus reserve of $3,600,000 which has no bearing whatever on the depreciation of respondent's property. It should also be pointed out that this value of $75,000,000 does not include any allowance for working capital, cost of financing or additions embraced in the 1946-1947 property and equipment program aggregating $18,870,000". With these additions, the valuation contended for by the city supports the allowed return under the new rates at a much lower rate of return than the commission considered proper.

does not invalidate the tariffs. The distance traveled in these areas determines the rate. A mere difference in transportation rates, such as this, between classes of travel, does not constitute unreasonable discrimination prohibited by the Public Utility Law, §304, 66 PS 1144. *Alpha Port. C. Co. v. Pub. Ser. Com.*, 84 Pa. Superior Ct. 255. The discrimination in rates in the present tariffs was logical and was clearly reasonable and within "the flexible limit of judgment which belongs to the power to fix rates": *Atlantic Coast Line v. N. Car. Corp. Com'n.*, 206 U. S. 1.

This Court's findings of fair value of the company's property made in the former appeal (*Phila. Trans. Co. v. Pa. P. U. C.*, 155 Pa. Superior Ct. 9, 37 A. 2d 138) were admitted by the commission in this case over the city's objection as "some evidence of value". The city is unduly sanguine in expecting us to admit error in that ruling. Cf. *Beaver Valley Water Co. v. Pa. P. U. C.*, 140 Pa. Superior Ct. 297, 307, 14 A. 2d 205. We cling to the illusion, if such it be, that we dealt in that proceeding with questions which were not entirely moot and that our exercise was not wholly academic. However, in any view, this is clear. The commission's staff in presenting evidence in its investigation ignored our former discussion; the commission in its opinion and order, in the investigation brought by it, did not consider it necessary "to decide whether the Superior Court's determination is binding and conclusive in this proceeding"; if our finding of value in the former appeal was one of the elements considered by the commission it was not regarded as controlling in arriving at the present orders. The city was in no way affected by the ruling and therefore was not harmed.

The remaining contentions of appellant are captious and are wholly without merit. All of the evidence supports the conclusion that the proposed rates are just and reasonable.

Orders affirmed.