Bessie DIGGS et al. v. PENNSYLVANIA
PUBLIC UTILITY COMMISSION
et al.

No. 10118.

United States Court of Appeals
Third Circuit.

Argued Jan. 4, 1950.

Decided March 2, 1950.

Hymen Schlesinger, Pittsburgh, Pa., for appellants.

Samuel L. Fuss, Pittsburgh, Pa., for Trustees of Pittsburgh Rys. Co.

Lloyd S. Benjamin, Harrisburg, Pa. for Pa. Public Utility Commission.

Maurice J. Dix, New York City, for Guggenheim, et al.

Before BIGGS, Chief Judge and MARIS and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The suit at bar is brought by Diggs, a judgment creditor of Pittsburgh Railways Company (the Company), as a class action on behalf of "all" creditors of the Company, against the Pennsylvania Public Utility Commission (the Commission), against the Company and against trustees appointed by the court below for the Company pursuant to Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The other plaintiffs, Wright and Lazeris, fare-paying patrons

of the transportation system operated by the Company or its subsidiaries, have joined in the complaint and have filed a class suit on behalf of users of the transportation system maintained by the Company. Jurisdiction in the court below is alleged to exist under the provisions of Section 1331[1] of Title 28, United States Code Annotated and the Fourteenth Amendment, and also under Section 1343, the "Civil Rights" section of Title 28. The last ground for jurisdiction was not asserted in the court below and is urged for the first time before us.

Stripping the complaint of surplusage and dealing only with those allegations which tend to support the contention that the plaintiffs Wright and Lazeris are being deprived of property without due process of law—for there are none which demonstrate that Diggs is being thus endamaged—we find that it alleged that in the latter part of 1948 the Company by its trustees filed with the Commission new tariffs providing for increases in fares; that the Commission, following the filing of a complaint with it by the City of Pittsburgh, suspended the proposed increase for a period of six months and conducted hearings on the reasonableness and propriety of the proposed increase;[2] that by "further action" of the Commission the "increases were allowed to become effective" on June 20, 1949; that the City thereupon appealed to the Superior Court of Pennsylvania[3] and that the Superior Court ordered that the appeals should operate as a supersedeas; that the Superior Court concluded that there was insufficient evidence in the record before the Commission to sustain the Commission's action and indicated " * * * directly or indirectly that the said rates were discriminatory, excessive, unjust, illegal and void", and remitted the case and the record to the Commission for further hearings, entering

1. The complaint asserts jurisdictional amount in the following unusual terms: "The amount in controversy in this action exceeds $3,000 inasmuch as such increased rates will illegally take thousands of dollars daily from the public who use the transportation facilities of the company." It will be observed that the allegation of amount in controversy is not strictly in accordance with the provisions

of Section 1331 of Title 28, United States Code Annotated and that the allegations of jurisdictional amount can relate only to the cause of action asserted by Wright and Lazeris. In the view we take of the case these technical defects become immaterial.

2. 66 P.S.Pa. § 1148.

3. 66 P.S.Pa. § 1431.

an order setting aside its order of supersedeas, and "* * * indicated directly or indirectly that the Commission and the Company by appropriate action after proper findings, * * * [should] place into temporary effect the * * * rate increase * * *";[4,5] and that new rates were actually put into effect by the Company on November 23, 1949. The complaint goes on to allege that while the new rates were put into effect no provision was made for the issuance of fare receipts or fare rebate slips. It is conceded that none of the plaintiffs has appeared before the Commission, has made any application to it, or has made any objection to the Commission's actions, or that the plaintiffs or any of them have taken part by way of intervention[6] or otherwise in any proceeding in a Pennsylvania State Court.[7]

Motions to dismiss were filed by the Commission and the trustees.[8] After hearing the court below concluded[9] that no "constitutional question" was presented and dismissed the complaint. See Mayo v. Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774. The plaintiffs appealed and made application to this court to advance the hearing date. At the hearing of this application, all of the parties consenting and

4. 66 P.S.Pa. §§ 1148, 1437.

5. See City of Pittsburgh v. Pennsylvania Public Util. Comm., 165 Pa.Super. 519, 69 A.2d 844.

The Superior Court discussed the findings of the Commission on which the latter's orders were based and theories of valuation and of fair return and found that certain important factors on which the Commission had apparently placed some weight (five year average prices, reproduction cost and obsolescence. for example) either were not representative or had not been made the subject of findings by the Commission. The Superior Court pointed out that it is a matter of common knowledge that the street railway systems of Pittsburgh have suffered substantial declines in gross revenues during 1949. It stated also that there was merit in the City's contention that the increase in the basic fare places "an undue burden" on short haul riders.

The court went on to say, however, 165 Pa.Super. at page 530, 69 A.2d at page 850, "But we are unable to determine on the present record whether the discrimination in rates in the new tariffs is * * * within 'the flexible limit of judgment which belongs to the power to fix rates.'", citing Atlantic Coast Line R. Co. v. North Carolina Corp. Comm., 206 U.S. 1, 27 S.Ct. 585, 51 L.Ed. 933, 11 Ann.Cas. 398; City of Philadelphia v. Pennsylvania Public Utility Commission, 162 Pa.Super. 425, 432, 57 A.2d 613, 616; Reading Coach Co. v. Public Service Commission, 125 Pa.Super. 493, 498, 190 A. 172, 173. After further discussion of the contentions of the Commission and the Company the court stated also, "We are of the opinion that the Commission should receive further relevant evidence, if offered; that it make revised or further findings of fact as warranted by all the evidence; and that a schedule of rates and fares which are just, reasonable, and non-discriminatory be fixed. The present record furnishes an inadequate basis for final disposition of this case, and therefore it will be returned to the Commission for further action on the subjects to which we have referred." See 165 Pa. Super. at pages 531–532, 69 A.2d at page 850.

The court entered the following order. See 165 Pa.Super. at page 532, 69 A.2d at page 850. "The order of supersedeas of July 7, 1949, will be terminated, and the new tariffs filed on November 19, 1948, by Railways and Motor Coach [Motor Coach being a wholly owned subsidiary of the Company], or such rates as the Commission may legally prescribe, should become effective pending further action by the Commission and the ultimate determination of a proper rate schedule."

6. 66 P.S.Pa. § 1434.

7. We observe that the plaintiffs Diggs and others, not including Wright and Lazeris, made application in the Pittsburgh Railways Company reorganization proceeding, at No. 20,225 in the court below, to restrain the trustees from putting the objected to rate into effect. See In re Pittsburgh Rys. Co., D.C., 75 F.Supp. at page 360. The application was denied and the plaintiffs were in effect remanded to the Public Utility Commission to present their objection. Neither Diggs nor any of the other plaintiffs in that suit took advantage of this suggestion or any appeal.

8. The trustees also filed an answer, the contents of which are not pertinent to the issues here under discussion.

9. In an opinion not reported for publication.

the record being fully before us, we heard the appeal on the merits. We conclude that the judgment of the court below must be affirmed.

█ It is clear that the plaintiff Diggs does not possess the capacity to maintain the instant suit. She sues merely as a judgment creditor, not as a fare-paying passenger and though she purports to represent as a class "all other creditors" of the Company, she and they are in fact represented by the trustees appointed for the Company by the court below. We will assume *arguendo* that Wright and Lazeris possess the capacity to maintain the suit[10] and that jurisdiction is or may be bottomed on Section 1343 of Title 28, United States Code Annotated.[11]

The rates here questioned were promulgated voluntarily by the Company pursuant to Section 308(a)[12] of the Pennsylvania Public Utility Law and thereafter were suspended by the Commission pending investigation pursuant to Section 308(b).[13] The Commission found that the proposed rates would not produce an excessive return and terminated its investigation, dismissing the City's complaint. Pursuant to Section 1101[14] the City then appealed to the Superior Court of Pennsylvania which granted the supersedeas but after hearing vacated its stay and ordered the new tariffs "or such rates as the Commission may legally prescribe" to become effective pending further action by the Commission and the ultimate determination of a proper rate schedule by it.[15]

█ What the Superior Court of Pennsylvania apparently did was to treat the rates promulgated by the Company and found by the Commission as not producing an excessive return as "temporary rates". See Section 310(a)[16] which would permit the Commission to fix a temporary rate based on the single factor of original cost less depreciation. In this connection see Section 310(e),[17] which authorizes recoupment by the Company. See Beaver Valley Water Co. v. Driscoll, D.C., 28 F.Supp. 722, a decision of a three judge court sitting in the Western District of Pennsylvania pursuant to Section 266 of the old Judicial Code.[17a] The recoupment provision of Section 310(e) was held by the court to render a temporary rate based on the formula of Section 310(a) constitutional within the purview of the XIV Amendment. Cf. Prendergast v. New York Telephone Company, 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853. It may be argued that the power to fix rates lies only in the Commission and that the Superior Court transcended its authority by transmuting rates promulgated by the Company as new permanent rates, and approved by the Commission to the extent indicated as new permanent rates, into "temporary" ones and then ordering them into effect. But even if we assume that the Superior Court in doing this erred as a matter of law, as to which we need not express an opinion, nonetheless no question was presented with which the court below could properly concern itself. A mere error of law does not deprive the individual of property without due process of law or

---

10. Cf. U. S. Light & Heat Corp. v. Niagara Falls G. & E. L. Co., 2 Cir., 47 F.2d 567. See also St. Paul Book & Stationery Co. v. St. Paul Gaslight Co., 130 Minn. 71, 153 N.W. 262, Ann.Cas.1916B, 286, L.R.A.1918A, 384, and Homestead Co. v. Des Moines Electric Co., 8 Cir., 248 F. 439, 12 A.L.R. 404. Cf. Smith v. Delaware Coach Co., Del.Ch., 70 A.2d 257.

11. Cf. Palmer v. Reconstruction Finance Corporation, 2 Cir., 164 F.2d 466, 468. But see Hormel v. Helvering, 312 U.S. 552, 556–557, 61 S.Ct. 719, 85 L.Ed. 1037.

12. 66 P.S.Pa. § 1148(a).

13. 66 P.S.Pa. § 1148(b).

14. 66 P.S.Pa. § 1431.

15. The facts in the instant case are not in dispute and are such that the court below and this court are entitled to take judicial notice of them. They are set forth in substance though with some "warping" in the complaint as we have demonstrated in our résumé of its pertinent allegations. We have included the paragraph to which this note is cited to the end that the record may be clear.

16. 66 P.S.Pa. § 1150(a).

17. 66 P.S.Pa. § 1150(e).

17a. 1948 Revised Code, 28 U.S.C.A. §§ 2101, 2281, 2284.

raise a constitutional issue if adequate provision for the review of the offending judicial decision is available. This principle, so long recognized by both Congress and the courts, is presently embodied in Section 1342 of Title 28, United States Code Annotated.[18] The statute provides that a district court of the United States shall not enjoin or restrain the operation of any order affecting rates chargeable by a public utility and made by a State administrative agency where a plain, speedy and efficient remedy may be had in the courts of such State. Such a remedy was available to the plaintiffs Wright and Lazeris.

Section 1001[19] gave Wright and Lazeris the right to appear before the Commission and to complain of the rates promulgated by the trustees of the Company. They did not do so. They could have had the opportunity under Section 1101[20] to appeal to the Superior Court from the order of the Commission finding the new rate not to be excessive and terminating its investigation. They did not do this. The City of Pittsburgh, however, appearing as it were, *parens patriae,* did file a complaint with the Commission and did appeal to the Superior Court from the Commission's decision.[21] Under Section 1104[22] Wright and Lazeris could have been permitted to intervene in the appeal to the Superior Court and had they intervened, with the City of Pittsburgh, they could have made application for allocatur to the Supreme Court of Pennsylvania under Section 1109[23] and for certiorari to the Supreme Court of the United States. But Wright and Lazeris made no application for intervention.

Section 1111[24] permitted the City of Pittsburgh or Wright or Lazeris to make an application to the Dauphin County Court for an injunction to modify, stay or suspend the order of the Commission finding that the proposed rates would not produce an excessive return and dismissing the investigation. No application was made to the Dauphin County Court. Nor does question remain that the Dauphin County Court would have had the power to stay the order of the Commission. The word "jurisdiction" in Section 1111[25] has now been so enlarged by judicial decision by the Supreme Court of Pennsylvania and by the Dauphin County Court that no doubt remains that the Johnson Act is satisfied.[26]

---

18. Section 1342 provides:
   "The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
   "(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
   "(2) The order does not interfere with interstate commerce; and,
   "(3) The order has been made after reasonable notice and hearings; and,
   "(4) A plain, speedy and efficient remedy may be had in the courts of such State."

19. 66 P.S.Pa. § 1391.

20. 66 P.S.Pa. § 1431.

21. We are aware of the contention of the defendants that the rates are purely those created by the Company and that they have not received any support from orders of the Commission or of a court. The defendants' position is untenable. The rates were found by the Commission not to be such as would produce an excessive return and they have received the support of the Superior Court. The orders of the Commission and of the Superior Court were not mere abstract declarations but were reviewable orders. Cf. Rochester Tel. Corp. v. United States, 307 U.S. 125, 143–144, 59 S.Ct. 754, 83 L.Ed. 1147.

22. 66 P.S.Pa. § 1434.

23. 66 P.S.Pa. § 1439.

24. 66 P.S.Pa. § 1441.

25. Section 1111 is as follows:
   "No injunction shall issue modifying, suspending, staying, or annulling any order of the commission, or of a commissioner, except in a proceeding questioning the jurisdiction of the commission, and then only after cause shown upon a hearing. The court of common pleas of Dauphin County is hereby clothed with exclusive jurisdiction throughout the Commonwealth, of all proceedings for such injunctions, subject to an appeal to the Superior Court as aforesaid."

26. See Bell Telephone Co. v. Driscoll, 343 Pa. 109, 112, 21 A.2d 912, 914, in which

The intervention of a three-judge Section 2281 court is not authorized. No serious or substantial constitutional question was or could be presented to the court below. The "temporary" rates now in effect pursuant to the order of the Superior Court were arrived at, even if arrived at erroneously, by due process of law as provided by the Pennsylvania statutes and decisions. Errors committed by courts and commissions, subject to review by duly constituted tribunals, do not constitute deprivation of property without due process of law. We have stated this before but we repeat by way of emphasis. Moreover, Wright and Lazeris stood aloof from the Commission and from the Pennsylvania State courts and did not seek aid in a single remedy or a tribunal made available to them by the Public Utility Law. When the struggle conducted by the City of Pittsburgh for the benefit of fare-paying passengers turned out unfavorably, as Wright and Lazeris allege, they attempt by invoking the aid of a Section 2281 court and the Section 2284 procedure [27] to retry the issues in the court below. They must fail.

One remaining point raised by

the Supreme Court of Pennsylvania stated, "We have no doubt about the right of the Court of Common Pleas of Dauphin County in the exercise of its equitable powers to entertain a bill to enjoin an administrative agency of the Commonwealth from exercising powers not conferred on it or unconstitutionally conferred on it." See also York Railways Co. v. Driscoll, 331 Pa. 193, 196, 200 A. 2d 864, 865, in which the Supreme Court of Pennsylvania said, "We have no doubt about the right, indeed the duty of the Dauphin County Court, to entertain a bill to enjoin the Commission from acting in this case or in any other in which the powers and authority of the Commission to act are called in question. * * *" In Beaver Valley Water Co. v. P. U. C., 51 Dauphin County Reports 105, 114, the Dauphin County Court, to which the Legislature of Pennsylvania has confided injunctive power under the statute, discussing Driscoll v. Edison Co., 307 U.S. 104, 108–109, 59 S.Ct. 715, 83 L.Ed. 1134, and inter alia, the York Railways Co. case and the Bell Telephone Company of Pennsylvania case, stated: "It is apparent, therefore, that the York Railways Company case broadens the definition of the word 'jurisdiction' under Section 1111. In the language of the Supreme Court [of Pennsylvania], this court may entertain a bill for an injunction in any case 'in which the powers and authority of the Commission to act are called into question' ".

In the Bell Telephone Company case, the Company filed a bill in equity in the Dauphin County Court praying for an injunction to restrain the Commission from enforcing against it the provisions of Section 702, 66 P.S.Pa. § 1272, which required approval by the Commission of modifications of existing contracts. The section was held to be unconstitutional.

In the York Railways Company case, the Company filed a bill for an injunction in the Dauphin County Court to enjoin the Commission from refusing to register a certificate filed by the Company for the extension of the time of payment of certain securities. This duty was confided to the Commission by Section 601(a), 66 P.S.Pa. § 1241(a). The Supreme Court held the section unconstitutional.

In the Beaver Valley Water Co. case, an increase in fares based on Section 310 (a) and (e) of the Public Utility Law of Pennsylvania providing for temporary rates and reimbursement, which had been held valid by a three judge Section 266 court. Beaver Valley Water Co. v. Driscoll, D.C., 28 F.Supp. 722, was enjoined by the Dauphin County Court on the ground that the Company had subsequently disposed of its assets to a municipal corporation not subject to the Public Utility Law.

While the York Railways Co. case was decided by the Supreme Court of Pennsylvania, prior to the decision of the Supreme Court of the United States in Driscoll v. Edison Co., 1939, 307 U.S. 104, 109–110, 59 S.Ct. 715, it does not appear from the opinion of the Supreme Court that this case was brought to its attention. The Bell Telephone Company case and the Beaver Valley Water Company case were decided about two years after the decision of the Supreme Court in Driscoll v. Edison Co. The interpretation by the Pennsylvania courts of the word "jurisdiction" in Section 1111 of the Public Utility Law is now fully developed and we have no hesitancy in holding that where, as in the instant case, the validity of a rate is called into question, the Dauphin County Court may enjoin its operation.

27. Sections 2281 and 2284 of Title 28 of the United States Code.

Wright and Lazeris should perhaps be discussed though its disposition is not essential to decision of the instant case. The plaintiffs allege, as we have said, that the continuance of the temporary rates without the issuance of fare receipts or rebate slips deprives them of property without due process of law since they will not be able to recover any amounts which may be paid by them for fares in excess, if any, of the permanent rates to be found in the future by the Commission. We point out that Section 313 [28] of the Public Utility Law provides a method for obtaining refunds "in any proceeding involving rates" when the Commission or a Pennsylvania court determines that a rate is unjust or unreasonable. Cf. Peoples Natural Gas Co. v. Pennsylvania P. Utility Comm., 153 Pa.Super. 475, 501, 34 A.2d 375, 387–388. To make the section effective receipts or rebate slips would have to be given to the fare-paying passengers who are now paying the "temporary" rates put into effect under the order of the Superior Court. This involves no practical impossibility. We may take judicial notice that the employment of such a technique to avoid losses to fare-paying passengers has been adopted frequently. But Wright and Lazeris have made no application to the Commission for an order requiring the Company to issue rebate slips or receipts. If they make such an application it may be granted by the Commission. If it should be refused the plaintiffs may apply to the Dauphin County Court for injunctive relief under Section 1111. In short, Wright and Lazeris have not exhausted their administrative remedies and therefore are not entitled to the relief to be afforded by Sections 2281 and 2284 of Title 28 United States Code Annotated. Natural Gas Pipeline Co. of America v. Slattery, 302 U.S. 300, 310, 311, 58 S.Ct. 199, 82 L.Ed. 276.

■ The plaintiffs also seek relief by way of a declaratory judgment. In respect to this issue we need state only that relief under the Declaratory Judgments Act, Section 2201, Title 28 United States Code Annotated, may be granted only in those cases which would fall within the jurisdiction of a United States district court if affirmative relief were sought. The fact that a declaratory judgment is prayed for by a plaintiff does not in itself supply ground for federal jurisdiction. Southern Pacific Co. v. McAdoo, 9 Cir., 82 F.2d 121; Putnam v. Ickes, 64 App.D.C. 339, 78 F.2d 223, 226. Consequently this phase of the plaintiffs' case fails also.

■ Some of the defendants have taken the position that this court is without the power to entertain the appeal and that it should be dismissed for that reason. We cannot agree. We have held, as did the court below, that no serious or substantial claim of unconstitutionality has been presented. The court below was justified in dismissing the complaint. Mayo v. Canning Co., 309 U.S. 310, 316–318, 60 S.Ct. 517, 84 L.Ed. 774. The appeal from the order of dismissal could not be properly taken to the Supreme Court of the United States for Section 1253 of Title 28 United States Code Annotated, provides, "Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges." Since this case was not heard or required to be heard by a district court of three judges the appeal from the order of dismissal is to this court by virtue of Section 1291 of Title 28 United States Code Annotated. This view is, we believe, in accord with that of the Supreme Court. Stainback v. Mo. Hock Ke Lok Po, 336 U.S. 368, 69 S.Ct. 606.

The judgment of the court below will be affirmed.

28.  66 P.S.Pa. § 1153.