## Pittsburgh *v.* Pennsylvania Public Utility Commission.

Argued July 17, 1952. Before RHODES, P. J., RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (HIRT, J., absent).

*Anne X. Alpern,* City Solicitor, with her *J. M. Marshall,* Assistant City Solicitor, for City of Pittsburgh.

*Clarence Freedman,* for Pennsylvania Public Utility Commission.

*C. K. Robinson,* for Pittsburgh Railways Company.

PER CURIAM, July 24, 1952:

We shall make an order granting supersedeas in City of Pittsburgh v. Pennsylvania Public Utility Commission, No. 173, April Term, 1952. In view of the nature of the proceedings we shall give our reasons for making the following order.

The Pittsburgh Railways Company, on June 24, 1952, filed a new tariff of rates and fares for street car service, Rail Pa. P. U. C. No. P-24, to become effective July 27, 1952, and canceling Rail Pa. P. U. C. No. P-23, and all supplements thereto.[1] Corresponding tariffs were filed for bus and incline service. On July 14, 1952, the Commission, by a vote of three of the Commissioners to one, allowed the new tariffs to become effective as to rates and fares and as to cancellation

---

[1] The City of Pittsburgh filed a petition for suspension on July 10, 1952.

of the existing tariffs, which are the subject of an undetermined rate proceeding before the Commission. The new tariffs increased the rates and fares of the Pittsburgh Railways Company over those of the existing tariffs. The Pittsburgh Railways Company had filed on August 10, 1951, tariff Rail Pa. P. U. C. No. P-23, effective September 10, 1951. Complaint was filed by the City of Pittsburgh before the effective date. Hearings were held by the Commission and the taking of testimony was concluded on June 17, 1952. As stated before this Court, briefs were directed to be filed by the Company on July 29, 1952, and by the City on August 10, 1952. Although the said rate proceeding has not been concluded, the Commission allows by its action the new tariffs to become effective on July 27, 1952.

We are of the opinion that, pending the disposition of the undetermined rate proceeding, no increase in rates is permissible except as may be provided by section 310 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1150; and that the action of the Commission by a majority vote in allowing new tariffs to become effective and the protested tariffs to be canceled was arbitrary, unreasonable, and contrary to law.[2] Such result was not accomplished by alleged Commission non-action under section 308 of the Public Utility Law of 1937, 66 PS §1148. Not only was the action of the Commission evidenced by a vote of the members of the Commission, but a so-called "release" under date of July 15, 1952, issued by the Commission

[2] *Peoples Natural Gas Company v. Pennsylvania Public Utility Commission*, 141 Pa. Superior Ct. 5, 14 A. 2d 133, and *Philadelphia v. Pennsylvania Public Utility Commission*, 164 Pa. Superior Ct. 96, 63 A. 2d 391, are cases where new tariffs were filed pending the determination of the rate proceedings instituted against existing rates, but the new tariffs were not allowed to become effective pending the determination of the rate proceedings.

gave notice that monthly reports were required to be filed by the Company as to the results of the new rates and fares, and set forth what was apparently considered by the Commission to be the need for such new rates and fares. The present situation is the consequence of Commission action. If there was no order pro forma there was an order de facto.[3] Appellate review of Commission action cannot be precluded by subterfuge or by the form in which such action is evidenced. Moreover, administrative action cannot violate the fundamental principles of fairness any more than it can impinge on any constitutional right.

In the pending rate proceeding at P. U. C. Docket No. C 15327, involving a basic fare increase to 17 cents, the burden of proof to show the rates to be just and reasonable was upon the utility. Section 312 of the Public Utility Law of 1937, 66 PS §1152.

In *Copley Cement Mfg. Co. v. Public Service Commission*, 76 Pa. Superior Ct. 354, 359, 360 (1921), this Court said: "It would be an anomaly indeed if while such investigation was still pending and while such burden was unsatisfied the company by ignoring the situation and proceeding as if no burden then rested upon it, could merely by filing, publishing and posting newer and higher rates, interfere with, hamper or render to some extent abortive the pending investiga-

---

[3] At the hearing and argument on the petition of the City of Pittsburgh for supersedeas, it was conceded that allowing the new tariffs of Pittsburgh Railways Company to become effective on July 27, 1952, would make moot, except in some minor aspects, the undetermined rate proceeding, involving the 17 cent fare, although briefs had been directed to be filed and the case has been scheduled for argument before the Commission. If the Commission has power to prevent judicial review of the pending rate proceeding by allowing the new tariffs to go into effect, it follows that later tariffs cannot be judicially reviewed if the utility and the Commission follow the same procedure.

tion and make its customers pay still higher rates when it had not to that time satisfied the commission that it was justified in charging the rates then being investigated." We are fully aware that this decision of the Superior Court was reversed by the Supreme Court of Pennsylvania in *Copley Cement Mfg. Co. v. Public Service Commission,* 271 Pa. 58, 114 A. 649 (1921), where it was held, in effect, that, under the Public Service Company Law of July 26, 1913, P. L. 1374, a public service company could increase its rates while it had a prior increase complained against (before the effective date) undetermined by the Commission, and that the Commission had no jurisdiction to order that the Company should continue the rates against which the pending complaint had been filed.

In our opinion the decision of the Supreme Court in the *Copley* case is not applicable as that decision was under the Act of 1913. The Act of 1913 contained no provision for temporary rates, and it granted no power of suspension to the Commission as now provided in section 308 of the Public Utility Law of 1937, 66 PS §1148. The Act of 1937, §310, 66 PS §1150, provides that the Commission may "fix, determine, and prescribe temporary rates to be charged by such public utility, *pending the final determination of such rate proceeding.*" [Italics supplied.] Manifestly the legislature intended by such provision to permit, if necessary, temporary rates pending the determination of a rate proceeding. This provision, considered in the light of the general purposes of the Public Utility Law, prohibits successive increases by filing new tariffs while a rate proceeding is still undetermined. In this connection the principle that all legislation must be construed as intending to favor the public interest is applicable. *Com. ex rel. Shumaker v. New York & Pennsylvania Company, Inc.,* 367 Pa. 40, 53, 79 A. 2d 439.

At the same time, adequate protection is given to the utility to obtain relief in the event of an emergency pending final determination of the rate proceeding.

And now, July 24, 1952, it is ordered, after hearing, that the appeal at No. 173, April Term, 1952, shall operate as a supersedeas, stay and suspension of the Commission's order of July 14, 1952, allowing tariffs, including tariff Rail Pa. P. U. C. No. P-24, to become effective on July 27, 1952, and canceling existing tariffs and all supplements thereto; and that the said Pennsylvania Public Utility Commission and the Pittsburgh Railways Company be and hereby are prohibited from making effective the rates and fares prescribed by the new tariffs and from canceling the existing tariffs until the pending rate proceeding is determined, except as may be permitted by proper action under section 310 of the Public Utility Law of 1937, 66 PS §1150.