Pittsburgh, Appellant, *v.* Pennsylvania Public
Utility Commission.

Argued October 9, 1952. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J.,
absent).

*John M. Marshall,* Assistant City Solicitor, with him *Anne X. Alpern,* City Solicitor, for City of Pittsburgh, appellant.

*Lloyd S. Benjamin,* Acting Counsel, with him *John E. Fullerton,* Assistant Counsel, and *William J. Grove,* Assistant Counsel, for Pennsylvania Public Utility Commission, appellee.

*Charles K. Robinson,* with him *Vergil W. Thomas* and *William Anderson, Jr.,* for Pittsburgh Railways Company, intervenor, appellee.

OPINION BY RHODES, P. J., January 19, 1953:

This is an appeal by the City of Pittsburgh from the order of the Pennsylvania Public Utility Commission of September 4, 1951, at Complaint Docket No. 15135, dismissing the City's complaint against further fare increases by Pittsburgh Railways Company.

On January 18, 1951, Railways filed tariffs providing for increased rail, bus, incline plane and through motor coach fares. The increases included the following: Street car fare (token) 12 cents to 13¾ cents; bus ticket from 15 cents to 17½ cents; incline plane (token) 12 cents to 13¾ cents. The basic cash fare of 15 cents remained. The Commission did not suspend the proposed tariffs and they became effective February 18, 1951. On January 27, 1951, the City of Pittsburgh filed its complaint, Complaint Docket No. 15135, with the Commission against the tariffs of January 18, 1951, charging that they were unjust, unreasonable, discriminatory, and would produce an excessive and unlawful return. Hearings were held before the Commission on April 23 and 24, 1951, May 22, 1951, and June 30, 1951. On August 10, 1951, before any determination by the Commission of the pending increases,

Railways filed a new schedule of rates, to be effective September 10, 1951, increasing the basic street car cash fare from 15 cents to 17 cents. Complaints against the increase to 17 cents were filed by the City of Pittsburgh and others.[1]

On September 4, 1951, the Commission issued its order at Complaint Docket No. 15135, the subject of the present appeal, in which the Commission found that the amount available for return to Railways was not excessive on any finding of fair value which the Commission would be justified in making, giving consideration to the measures of value of Railways' plant as of December 31, 1950. The Commission further found the rates were not unjustly discriminatory, and dismissed the complaint of the City.

As stated, in addition to the tariffs of January 18, 1951, Railways has filed tariffs providing for further increases— tariff filed August 10, 1951, increasing the basic street car cash fare to 17 cents, and tariff filed June 24, 1952, increasing such basic fare to 20 cents. The 17-cent fare is presently in effect. The increase to 20 cents has not become effective, an order of supersedeas having been issued by this Court. *Pittsburgh v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 391, 90 A. 2d 850. The tariffs, subject of complaint in this appeal represent the fourth increase in the rates of Railways since January 1, 1948. The history of the proceedings before the Commission on these prior rate increases is given in earlier decisions of this Court. *Pittsburgh v. Pennsylvania Public Utility Commission*, 165 Pa. Superior Ct. 519, 69 A. 2d 844; *Pittsburgh v. Pennsylvania Public Utility Commission*, 168 Pa. Superior Ct. 95, 78 A. 2d 35.

------

[1] The Commission by its order of December 2, 1952, sustained the increase and dismissed the complaints.

The following are the only questions presented by the City on the present appeal: (1) Is $50,000,000 the fair value of Railways' property? (2) Has the Commission given proper weight to obsolescence?

In prior proceedings involving an increase in the basic street car fare from 10 cents to 12 cents, the Commission found (June 15, 1949) the fair value of Railways for rate making purposes to be $50,000,000 as of December 31, 1948. *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 165 Pa. Superior Ct. 519, 524, 69 A. 2d 844. In its order of July 25, 1950, which involved a 15-cent cash fare (with transfer) and a token rate of 12 cents, the Commission found that the proposed rates would not yield an excessive return upon any finding of fair value that the Commission would be justified in making. *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 168 Pa. Superior Ct. 95, 98, 78 A. 2d 35. In the present proceeding the only measures of value before the Commission were those submitted by Railways. These measures, including materials and supplies and cash working capital, after deducting depreciation, as of December 31, 1950, were as follows: Original cost, $46,355,-173; reproduction cost at price level of December 31, 1950, $80,089,979; reproduction cost at average price level for three years ending December 31, 1950, $77,-053,815; reproduction cost at average price level for five years ending December 31, 1950, $72,183,081. The Commission did not make a definite finding of fair value. A finding of fair value is not an invariable requisite in rate cases. *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 168 Pa. Superior Ct., 95, 104, 78 A. 2d 35.

The City again asserts that the Commission did not give proper consideration to the element of obsolescence of the system and property of Railways. In this

appeal, as in *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 168 Pa. Superior Ct. 95, 78 A. 2d 35, the Commission held that estimates of accrued depreciation must be based on the condition per cent by future life and average service life method, and not upon the physical inspection of Railways' property and equipment. The percentage of accrued depreciation was substantially the same as in the prior proceeding (*Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 168 Pa. Superior Ct. 95, 78 A. 2d 35). It is the Commission's position, set forth in its brief, that the method used to estimate accrued depreciation takes into consideration all the causes of depreciation including obsolescence.

The principal argument of the City on this appeal is directed to the question of functional obsolescence of Railways' transportation system. The City's position is that electric street railway transportation systems have become obsolete in most large cities in the United States; that upkeep of such an obsolete system imposes inordinately high maintenance costs; that Railways is headed again for bankruptcy; and that it can never operate properly until it abandons its obsolete plant and turns to modern, efficient bus transportation.

The problem presented by inflation and rising costs as applied to public utilities is admittedly difficult to solve. In its present order the Commission recognized the problem and discussed various conditions which adversely affect the utility. The Commission observed that public use of mass transportation systems has declined in the past several years. It follows that a satisfactory return on estimated "fair value" or even on actual investment is difficult to secure. The solution of Railways' problem may not lie in repeated fare increases which seem to be pricing it out of the transportation

field. *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 165 Pa. Superior Ct. 519, 527, 69 A. 2d 844.

As a general proposition there is undoubtedly merit in the contention of the City that a utility is not entitled to a return based on theoretical reproduction cost of a plant which, because of obsolescence, would not be reproduced by any responsible management, or for that matter on any valuation that no longer has any relation to reality. As Mr. Justice JACKSON, in disposing of the contention of a street railway that the commission order required it to operate at a loss, stated in *Market Street Railway Co. v. Railroad Commission of California,* 324 U.S. 548, 564, 65 S. Ct. 770, 89 L. Ed. 1171, 1183: "No study of the present cost of reproduction is shown, no present fair value is suggested. Nor do we think it important. Apart from familiar objections to the reproduction-cost method, no responsible person would think of reproducing the present plant, consisting in substantial part of cable cars and obsolete equipment. There is no basis for assuming that anyone, in the light of conditions which prevail in the street-surface railroad industry generally, would consider reproducing any street railway system. It was no constitutional error to proceed to fix a rate in disregard of theoretical reproduction costs."

The City's argument that the only salvation of Railways lies in converting its obsolete plant by the introduction of modern methods, such as bus transportation, relates to economic and financial aspects of the problem which is largely a matter for management; the property of a public utility is still private property although devoted to the public service and impressed with the public interest. *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 165 Pa. Superior Ct. 519,

528, 69 A. 2d 844. On the other hand, the public utility exercises an extraordinary privilege and occupies a protected position; and the public is entitled to efficient service at reasonable rates.

Speaking for this Court, Judge ARNOLD now a Justice of the Supreme Court, said, in *Pittsburgh v. Pennsylvania Public Utility Commission,* 169 Pa. Superior Ct. 400, 404, 82 A. 2d 515, 517: "It must be recognized that there is always the desire of the utility to get as large a return as possible; and that likewise there is a desire on the part of the ratepayer to buy as cheaply as possible. Only the Commission can stand between the public and the utility. It is almost the only protection which the public has." It is self-evident that, in order to function, the rates of a public utility must be such as to cover legitimate operating expenses, but the time comes when the investment in a public utility cannot be entirely protected from changing conditions by the Commission's allowing ever increasing charges to be paid by the customer or consumer.

The principal contentions of the City are largely academic, and are not directly related to the order of the Commission from which the appeal has been taken.

The appeal is dismissed.