Pittsburgh, Appellant, *v.* Pennsylvania Public
Utility Commission.

Argued January 20, 1953. Before RHODES, P. J.,
HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ.

*Anne X. Alpern,* City Solicitor, with her *John M. Marshall* and *David Stahl,* Assistant City Solicitors, for City of Pittsburgh, appellant.

*William J. Grove,* Assistant Counsel, with him *Jack F. Aschinger, John E. Fullerton,* Assistant Counsel and *Lloyd S. Benjamin,* Acting Counsel, for Pennsylvania Public Utility Commission, appellee.

*Charles K. Robinson,* with him *Vergil W. Thomas,* for Pittsburgh Railways Company, intervening appellee.

*Gilbert Nurick,* with him *James W. Hagar* and *McNees, Wallace & Nurick,* for Pennsylvania Bus Association, amicus curiae.

OPINION BY RENO, J., March 25, 1953:

These appeals by the City of Pittsburgh have brought up for review two orders of the Pennsylvania Public Utility Commission relating to increases of fares by the Pittsburgh Railways Company. No. 27 April Term, 1953, concerns an increase of the basic street car fare from 15 cents to 17 cents, and No. 173 April Term, 1952, deals with an increase from 17 cents to 20 cents. Prior increases are discussed and decided in *Pittsburgh v. Pa. P. U. C.,* 165 Pa. Superior Ct. 519, 69 A. 2d 844; *Pittsburgh v. Pa. P. U. C.,* 168 Pa. Superior Ct. 95, 78 A. 2d 35; and *Pittsburgh v. Pa. P. U. C.,* 172 Pa. Superior Ct. 230, 93 A. 2d 715.

A brief statement of the history of the proceedings which produced the orders before us will be helpful.

On August 10, 1951, Railways filed a tariff increasing the basic street car fare from 15 cents cash fare to 17 cents, tokens from 13-3/4 cents (4 for 55 cents) to 16-2/3 cents (3 for 50 cents), and the 20 cent cash

bus fare was increased to 23 cents. The tariffs were scheduled to go into effect September 10, 1951. Prior to their effective date the City filed a complaint charging that, inter alia, the proposed rates would produce an excessive return, were unreasonable, and requesting the Commission to suspend them. The Commission permitted the 17 cent rate to become effective September 10, 1951. Hearings on the City's complaint were held by the Commission between October 4, 1951 and June 17, 1952. After the filing of briefs by Railways and the City, the Commission heard oral argument on August 26, 1952.

Meanwhile, on June 24, 1952, before the conclusion of the hearings on the 17 cent fares, Railways filed with the Commission a new schedule of rates to become effective July 27, 1952. These schedules increased the basic street car cash fare from 17 cents to 20 cents. They provided for a 45 cent weekly permit card, which was transferable and good for limited rides in downtown low fare zones, upon the payment of 15 cents for each ride. Such permit cards were introduced in place of the former 16-2/3 cents (3 for 50 cents) token fare, which was increased to 20 cents cash, and were intended to induce the short distance rider to make use of the system. The bus tariff increased the 23 cent cash fare to 25 cents. On July 10, 1952, the City filed complaint against the proposed 20 cent fares, alleging their unreasonableness, and asking the Commission to suspend. On July 15, 1952, the Commission, by a vote of three to one, permitted the 20 cent fares to become effective and thereby allowed cancellation of the existing 17 cent tariffs which were then the subject of an undetermined rate proceeding before the Commission.

On July 17, 1952, the City appealed to this Court at No. 173, alleging that the action of the Commission, allowing the 20 cent rate to become effective pending

the disposition of the undetermined rate proceeding on the 17 cent fare, was improper. At the same time the City petitioned this Court to have the appeal at No. 173 operate as a supersedeas. Motions to quash the City's appeal were filed by the Railways and by the Commission. The Commission also filed a motion to dismiss the petition of the City for a supersedeas. After argument on July 17, 1952, we entered an order granting the City's petition for supersedeas as to the 20 cent rate. *Pittsburgh v. Pa. P. U. C.,* 171 Pa. Superior Ct. 391, 90 A. 2d 850.

On August 9, 1952 this Court ordered that the motion of the Commission to quash the appeal at No. 173 be heard at the time the appeal was listed for argument. Railways and the Commission petitioned the Supreme Court of Pennsylvania for allowance of an appeal from our order of July 24, 1952 granting supersedeas as to the 20 cent fares, which the Supreme Court denied on August 28, 1952.

On December 2, 1952 the Commission entered an order dismissing the complaint of the City as to the 17 cent fares. The appeal taken by the City from this order of the Commission was listed as No. 27.

Before the Commission entered its order in the 17 cent fare complaint, the Commission and Railways sought argument on the motion to quash the appeal of the City in the proceeding involving the 20 cent fare. The City filed a petition asking this Court to continue the appeal in the 20 cent case and have it listed for argument at the same time as the argument in the 17 cent case. Immediately after the Commission's order of December 2, 1952, approving the 17 cent fares, Railways filed a petition asking this Court to terminate its supersedeas order of July 24, 1952 granted in the appeal at No. 173. The City filed an answer to Railways' petition to terminate the supersedeas or-

der of July 24, 1952. By an order of December 18, 1952, we directed argument on these two appeals be heard together on January 20, 1953, including argument on the petition to dissolve and terminate the supersedeas order of July 24, 1952. Argument was heard as directed and the appeals are presently before us for final disposition.

We consider first the appeal at No. 27 relating to the 17 cent fare approved by the Commission. In this connection the City does not contest Railways' estimates as to revenues and expenses and net income to be produced under the 17 cent fare tariffs. Nor does it seriously and primarily contend that the 17 cent fares are unreasonable or will produce an excessive return. It concentrates its fire upon another target. Railways submitted estimates of net return under the 17 cent rates, based upon the year ending December 31, 1951. These figures showed a total net income, before interest payments, of $838,212. The lowest measure of value appearing in the record was an original cost depreciated figure of $41,190,907. The Commission found that on an allowable return of 6½% Railways would be entitled to earn approximately $2,677,-000 on existing street railway-bus-incline operations; and that the Company's actual net earnings in 1951 amounted only to a 6½% return on $12,834,000. Accordingly the Commission concluded that the protested 17 cent fares would not produce an excessive return on any finding of fair value that could be made, and the rates were just and reasonable.

Net operating income for the first four months of 1952, as shown by the Railways' exhibit (No. 231) was approximately $500,000, and actual results under the 17 cent fares for the first eleven months of 1952 showed an income of $663,904, which tended to substantiate an estimated net under the 17 cent fares for the calen-

dar year 1952 not greatly different from the 1951 figure of $838,212.

The findings of the Commission with regard to net income and the reasonableness of the rates under the 17 cent fare are supported by evidence and must be affirmed. No finding of fair value is necessary where the Commission has sufficient evidence to act upon a rate tariff without it. *Phila. v. Pa. P. U. C.*, 162 Pa. Superior Ct. 425, 430, 57 A. 2d 613; *Phila. v. Pa. P. U. C.*, 164 Pa. Superior Ct. 96, 106, 63 A. 2d 391; *Pittsburgh v. Pa. P. U. C.*, 168 Pa. Superior Ct. 95, 104, 78 A. 2d 35; *Pittsburgh v. Pa. P. U. C.*, 172 Pa. Superior Ct. 230, 233, 93 A. 2d 715, supra.

The City's prime contention is that the Commission failed to find a solution for the "mass transportation problem in Pittsburgh", as its able solicitor calls it. It is the view of the City that an efficient, adequate, modern transportation system requires abandonment of electric street railway cars and conversion to bus operation which would effect substantial savings in operating costs, and that the Commission should refuse Railways any fare increases until it converts to busses and serves the public through a modern, efficient system. The Commission undoubtedly has the power to require a utility to render adequate and efficient service to the public at reasonable rates. At the same time the board of directors of the utility is granted discretion as to general matters of internal management, and the line between management and regulation cannot be readily drawn. Cf. *Penna. Telephone Corp. v. Pa. P. U. C.*, 153 Pa. Superior Ct. 316, 33 A. 2d 765. The argument of the City here, as in the previous appeal involving the 15 cent fares, relates to problems which are to a great extent within the realm of management and the Commission cannot interfere unless an abuse of discretion or arbitrary action be shown.

*Pittsburgh v. Pa. P. U. C.,* 172 Pa. Superior Ct. 230, 235, 236, 93 A. 2d 715.

In any event, the Commission gave full consideration to the City's contentions with regard to modernization of Railways system through conversion to bus operation. The City produced two principal witnesses, Steigelmeier and McIlraith, both of whom gave extensive opinion testimony to the effect that substantial savings in operation costs could be effected by conversion to busses. For instance Steigelmeier estimated that fifty per cent conversion would save $794,000, one hundred per cent conversion, $1,553,000. McIlraith estimated annual savings due to conversion of street car service to complete bus service, of approximately $6,000,000. The Commission carefully reviewed and analyzed the testimony of these two witnesses for the City, and pointed to the fact that their opinion testimony on these matters was highly speculative, not supported by underlying data, and based on an untenable theory. Reference was made by the Commission to the Lougee Report, submitted by a firm of engineers in March of 1949, by order of the Federal District Court for the Western District of Pennsylvania, in the re-organization proceedings of Railways. This report, made after extensive study in the field concluded that abandonment of the modern President's Conference Cars, and substitution of busses in the heavily traveled lines of Railways was not economically feasible or practical. The report did advise substitution of motor bus service on 19 routes comprising about twenty-five per cent of the car miles presently operated, and Railways is now abandoning track and substituting busses on some lines. The Commission concluded "that the claims of City of Pittsburgh that mass transportation operations of Respondent could at this time be more economically supplied by complete conversion of exist-

ing street railway operations to bus operations are unsupported, conjectural, and without any real merit, and must be rejected." There is substantial evidence to support the findings of the Commission in this respect and the findings are, therefore, binding upon us. *Orlosky v. Pa. P. U. C.,* 171 Pa. Superior Ct. 409, 413, 89 A. 2d 903.

In No. 173 the Commission and Railways contend (1) that the action of the Commission in voting not to suspend the 20 cent fare was not an appealable order, and (2) a proper interpretation of the Public Utility Law does not prevent a utility from filing higher rates while a prior rate is under investigation. What we said in our order granting a supersedeas as to the 20 cent fares, *Pittsburgh v. Pa. P. U. C.,* supra, 171 Pa. Superior Ct. 391, 90 A. 2d 850, effectively disposes of the questions again raised by the Commission and Railways, and further discussion is unnecessary. We adhere to that ruling without deviation, and the Commission's order of July 15, 1952 is null and void.

In the appeal at No. 27 April Term, 1953, the order of the Commission is affirmed.

In No. 173 April Term, 1952, the motion of Railways and the Commission to quash is denied; the order of July 15, 1952 is reversed and the order of supersedeas and prohibition issued thereon by this Court on July 24, 1952 is terminated; and the record is remitted to the Commission for further proceedings in accordance with law.