## West Penn Power Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued September 30, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*William H. Eckert,* with him *Emory R. Kyle, Smith, Buchanan, Ingersoll, Rodewald & Eckert, Oliver B. Merrill, Sullivan & Cromwell* and *Charles L. McCormick,* for appellant.

*Lloyd S. Benjamin,* Counsel, with him *W. Russell Hoerner* and *William J. Grove,* Assistant Counsels, for Pennsylvania Public Utility Commission, appellee.

OPINION BY RHODES, P. J., November 11, 1953:

This is an appeal by West Penn Power Company from an order of the Pennsylvania Public Utility Commission of February 16, 1953. A petition for rehearing and stay of that order was denied by the Commission on April 6, 1953.

In this appeal the Company takes the position that the action of the Commission on October 26, 1951, constituted a final order with a finding that the rates under tariff No. 30 previously filed by the Company were just and reasonable, and that the Commission was without authority to summarily issue its subsequent order of February 16, 1953, in which it held the same rates to be in part excessive and ordered refunds. The Commission, on the other hand, asserts that its initial action on October 26, 1951, was no more than a decision not to further suspend the rates under tariff No. 30 and was interlocutory, and that consequently its order of February 16, 1953, was the first final order in the rate proceeding and entirely proper.

The Commission in its brief concedes that if its action on October 26, 1951, was a final order of the Com-

mission with a finding that the rates proposed in tariff No. 30 were reasonable the Commission lacked authority to issue its subsequent order of February 16, 1953. The Commission also concedes that if its action on October 26, 1951, was such a final determination the rates under tariff No. 30 are commission-made rates of that date, and that no refunds can be ordered. The Commission further acknowledges that under section 1007 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1397, notice must be given and hearing granted before the Commission may modify a prior order, and that such section prohibits making acts done in pursuance of a prior order, illegal or invalid, with retroactive effect.

On February 28, 1951, the Company filed with the Commission tariff No. 30 to be effective April 29, 1951, and to supersede tariff No. 25. It was designed to produce an increase of $4,500,000 in annual operating revenues over those received under the previous tariff. By its order of April 24, 1951, the Commission suspended the operation of the proposed tariff (No. 30) for a period of six months until October 29, 1951. At the same time the Commission initiated an investigation on its own motion for the purpose of determining the fairness, justness, reasonableness, and lawfulness of the proposed tariff, the investigation to include consideration of the imposition of temporary rates. No complaints were filed with the Commission as to tariff No. 30 or the increase in rates provided therein. Hearings were held on twenty-one days, beginning May 23, 1951, at which evidence was introduced by the Company and the Commission.

On October 26, 1951, duly authorized personnel of the Commission informed officials of the Company that the Commission had decided the rates under tariff No. 30 were just and reasonable, and that it had

voted three to one not to suspend the operation of the proposed tariff for an additional three-month period. At the same time the Commission made public its determination by the issuance of a "release" which contained, inter alia, the following significant statements: "The West Penn Power Co., Pittsburgh, will increase rates approximately 10 per cent in 16 Western Pennsylvania counties next Monday (Oct. 29) when a six-month Public Utility Commission suspension expires . . . . The PUC, by a 3-1 vote, did not continue the suspension for an additional three months because the majority concluded, on basis of the exhaustive half-year inquiry, that West Penn has clearly justified the increased rates . . . . West Penn submitted voluminous operating evidence at many hearings held during the long investigation of the suspended rates which showed that the utility could sustain them on any fair value finding the commission would be justified in making, according to the PUC majority . . . . A formal order will be issued by the commission later." On October 29, 1951, the Company made effective the rates under tariff No. 30, and thereafter conducted its affairs on that basis. The Commission took no further action except for a brief hearing on November 29, 1951, which apparently has little, if any, significance. In view of Commission action on October 26, 1951, the Company did not file a brief or request oral argument before the Commission on the question of the reasonableness of the rates under tariff No. 30. Subsequent to October 29, 1951, the Company collected the higher rates under tariff No. 30; and at no time prior to the order of February 16, 1953, did the Commission intimate or give notice to the Company that the rates being collected under that tariff were unreasonable and possibly subject to refunds to its customers. On February 16, 1953, the Commission issued its order from

which the Company has taken the present appeal to this Court. In that order the Commission concluded that the Company was entitled to an increase in annual operating revenues of $2,836,160 instead of $4,500,000, as provided under tariff No. 30. Accordingly, the Commission ordered the Company to file rates under a new tariff (No. 31) designed to provide the allowable increase of $2,836,160. And in the order of February 16, 1953, the Commission further directed the Company to submit calculations of refunds to its customers based on the difference between the actual revenues received under tariff No. 30 and the revenues which would have been received if the new tariff (No. 31) had been in effect from October 29, 1951, to April 14, 1953, inclusive.

In ascertaining whether a particular action of the Commission constitutes an order of definitive character, we are guided by general principles of law applicable to administrative tribunals. The question of conclusiveness and finality of any administrative determination involves many factors, including the terms of the statute, the substance and effect of the order. 42 Am. Jur., Public Administrative Law, p. 507, §155. While the doctrine of res judicata does not apply, in any strict or technical sense, to decisions of administrative agencies, there must be a point at which an administrative ruling on the reasonableness of rates becomes fixed and definite though subject to change or modification in the future on proper proceedings. As an administrative body, the Commission is bound by the due process provisions of constitutional law and by fundamental principles of fairness. *Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 391, 395, 90 A. 2d 850. The Commission cannot make a final determination on an ultimate question before it for adjudication and subsequently

change such determination without observing the requirements of due process. The substance and not the form of commission action is controlling on the question of whether the Commission has entered a final, definitive order. *Columbia Broadcasting System, Inc., v. United States,* 316 U. S. 407, 416, 62 S. Ct. 1194, 86 L. Ed. 1563, 1570.

We are all of the opinion that under the circumstances disclosed by the present record the action of the Commission on October 26, 1951, as communicated to the Company and announced to the public, was a final administrative determination, evidenced by an order that the rates under tariff No. 30 were justified and reasonable. Whether it was a final order in form under recognized standards of judicial and administrative action is not material, as it had the effect in law of an order of definitive character in these proceedings. An important consideration is whether the pronouncement of the Commission was a ruling in the present tense that the rates were reasonable as distinguished from a publicized vote of the members of the Commission against further suspension under circumstances showing a definitive ruling on the reasonableness of the rates to be a matter for future action. Judged by these standards, the action of the Commission on October 26, 1951, was a determination on the facts, which the Commission had before it after extensive hearings, that the rates under tariff No. 30 were reasonable. The language of the "release" from the Commission was in the present tense, and the release was an official pronouncement that "on basis of the exhaustive half-year inquiry, . . . West Penn has clearly justified the increased rates." The Commission further stated that voluminous evidence submitted by the Company showed "the utility could sustain [the rates] on any fair value finding the commission would be

justified in making." The statement that a formal order would be issued later by the Commission carries the implication that the formal order would follow shortly as a matter of course in affirmance of the order of October 26, 1951, holding the rates reasonable. There is nothing indicating any intention to postpone or leave for the future a decision on the reasonableness of the rates under tariff No. 30. On the contrary, a final determination of this issue was ostensibly made. Moreover, the order of October 26, 1951, is not any less final and definitive on the question of the reasonableness of the rates because of its informality. The statutory requirement (section 1005 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1395) that the findings of the Commission be in sufficient detail to enable the court on appeal to determine the controverted question is in aid of the court. *Philadelphia v. Pennsylvania Public Utility Commission,* 162 Pa. Superior Ct. 425, 429, 57 A. 2d 613.

Under section 308 (b) of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1148, the Commission is given full power to deal with the question of suspension of rates filed by a utility for an initial six-month period and a subsequent three-month period. The exercise of its statutory power of suspension of new tariffs is primarily an administrative function within the sound discretion of the Commission (*Philadelphia v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 96, 103, 63 A. 2d 391); but its action may be set aside where in conflict with the general purposes of the Public Utility Law of 1937. *Pittsburgh v. Pennsylvania Public Utility Commission,* supra, 171 Pa. Superior Ct. 391, 90 A. 2d 850; *Pittsburgh v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 87, 94, 95 A. 2d 555. The Commission in the present proceeding could have permitted the

proposed tariff to become effective without ruling on the reasonableness of the rates therein. Failure to suspend would not amount to Commission approval of the rates in the tariff. The question of the reasonableness of the rates under tariff No. 30 would then have remained open for ultimate disposition. Again, under rudimentary principles of due process and fair play the Commission cannot subsequently reverse a previous order without giving notice to a utility and an opportunity to be heard. While the Commission has power to rescind or amend any order made by it (section 1007 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1397), the exercise of such function cannot violate fundamental principles of fairness or constitutional guarantees. Cf. *Jennings v. Pennsylvania Public Utility Commission*, 140 Pa. Superior Ct. 569, 577, 14 A. 2d 882. The requirement of due process of law in procedural matters applies equally to proceedings before administrative tribunals as well as judicial bodies. *Armour Transportation Co. v. Pennsylvania Public Utility Commission*, 138 Pa. Superior Ct. 243, 249, 10 A. 2d 86.

Finally, the Commission, having approved the rates under tariff No. 30, could not summarily reverse its order of approval and apply such reversal retroactively by ordering refunds for the period between October 29, 1951, and April 14, 1953. The order of October 26, 1951, amounted in law to formal Commission approval of the new rates filed by the Company under tariff No. 30, and rendered the rates in effect commission-made rates. Consequently, after it had previously approved the rates, the Commission could not give retroactive effect to its order of February 16, 1953, and direct refunds to consumers for charges made beginning October 29, 1951. Cf. *Cheltenham & Abington Sewerage Co. v. Pennsylvania Public Utility Commis-*

*sion,* 344 Pa. 366, 25 A. 2d 334; *Pennsylvania Railroad Co. v. Public Service Commission,* 125 Pa. Superior Ct. 558, 190 A. 367; *Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 153 Pa. Superior Ct. 475, 34 A. 2d 375. It is our conclusion that the action of the Commission on October 26, 1951, constituted a conclusive affirmative order stated in terms of administrative finality, and that the Commission had no authority without notice and a hearing to reverse such action and enter the order of February 16, 1953, from which the Company has taken this appeal. It follows the order of February 16, 1953, is void and of no effect. The Commission is of course free to take prospective action on the reasonableness of the Company's rates now being charged and collected under tariff No. 30.

The order of the Commission is reversed.