Pittsburgh, Appellant, *v.* Pennsylvania Public
Utility Commission.

Argued November 12, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Anne X. Alpern,* City Solicitor, with her *John M. Marshall* and *David Stahl,* Assistant City Solicitors, for Pittsburgh, appellant.

*Lloyd S. Benjamin,* Counsel, with him *Jack F. Aschinger,* Assistant Counsel, for Pennsylvania Public Utility Commission, appellee.

*Harry H. Frank,* with him *Vergil W. Thomas, Sterling G. McNees* and *McNees, Wallace & Nurick,* for Pittsburgh Railways Company, intervening appellee.

PER CURIAM, November 19, 1953:

The order of the Commission of October 5, 1953, is affirmed. The opinion of this Court will be filed at a subsequent date.

The order issued by this Court on October 15, 1953, making the appeal, No. 16, April Term, 1954, a supersedeas of the Commission's order, is vacated, and supersedeas is terminated.

---

OPINION BY RHODES, P. J., December 14, 1953:

This is an appeal by the City of Pittsburgh from an order of the Pennsylvania Public Utility Commission of October 5, 1953, allowing rate increases, including basic street car fare from 17 cents to 20 cents, by Pittsburgh Railways Company.

The City questions the validity of the order on two grounds. The City's principal contention is that conversion to buses by Railways would provide the City of Pittsburgh with a more serviceable and less expensive transportation system which would later lead to lower fares; and that failure to convert constitutes a gross abuse of managerial discretion which the Commission is obliged to correct by positive action. Secondly, the City asserts that it was deprived of an opportunity to present its case in full before the Commission.

On March 25, 1953, we affirmed an order of the Commission of December 2, 1952, disposing of complaints against Railways' tariff of August 10, 1951 (17 cent fare), and reversed the order of the Commission of July 15, 1952 (20 cent fare) and remanded the record to the Commission for further proceedings. *Pittsburgh v. Pennsylvania Public Utility Commission*, 173 Pa. Superior Ct. 87, 95 A. 2d 555. In that opinion, a history of the proceedings which preceded the respec-

tive orders was set forth. Pending disposition of the undetermined rate proceeding involving the 17 cent fare, the tariffs of Railways to become effective July 27, 1952, were not permitted to go into effect. *Pittsburgh v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 391, 90 A. 2d 850. The Supreme Court on June 26, 1953, denied the petition of the Commission for allowance of an appeal from our order of March 25, 1953 (*Pittsburgh v. Pennsylvania Public Utility Commission*, supra, 173 Pa. Superior Ct. 87, 95 A. 2d 555), in so far as our order related to the effective date of the 20 cent fare. Subsequent to remanding the record involving the 20 cent fare Railways, on April 6, 1953, filed with the Commission tariff supplements to make effective April 19, 1953, the rates which were originally proposed to be placed in effect on July 27, 1952, by virtue of the Commission's order of July 15, 1952. On the same day, the Commission suspended the said rates for six months from April 19, 1953, to October 19, 1953, and instituted an inquiry and investigation into the rates and charges contained in the tariffs and the supplements thereto. Railways filed a petition under section 310 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1150, seeking to have the suspended rates become effective as temporary rates, which was denied by the Commission.

Hearings were held on thirteen days from April 22, 1953, to August 5, 1953, and the Commission's report and order was rendered on October 5, 1953, whereby the suspended rates of Railways were allowed to become effective. The City appealed from this order and presented a petition to have the appeal operate as a supersedeas of the Commission's order pending argument and determination of the appeal. After hearing, this Court, on October 15, 1953, granted a supersedeas. On October 29, 1953, Railways petitioned this Court for

a termination of the supersedeas. This petition and the appeal were argued together on November 12, 1953.

The Commission in its order of October 5, 1953, found, inter alia: ". . . Railways has been proceeding toward an orderly transition of its rail lines to bus since inauguration of its bus service in 1924. In 1929, it had 592 miles of track which was reduced to 543 miles in 1948, and will be further reduced to 431 miles during 1953, upon consummation of pending rail abandonments and the conversion of certain rail lines to bus operation . . . . The record is clear that respondent has been proceeding to convert certain of its street railway routes to bus operation. The speed of the transition being made is not unreasonable . . . . ."

The evidence is conflicting as to the desirability and feasibility of complete conversion to bus operation. Similar testimony and the same arguments were presented in a prior proceeding which was before this Court on appeal in *Pittsburgh v. Pennsylvania Public Utility Commission, supra,* 173 Pa. Superior Ct. 87, 95 A. 2d 555. We there said (page 92 of 173 Pa. Superior Ct., page 558 of 95 A. 2d) : "The City's prime contention is that the Commission failed to find a solution for the 'mass transportation problem in Pittsburgh,' as its able solicitor calls it. It is the view of the City that an efficient, adequate, modern transportation system requires abandonment of electric street railway cars and conversion to bus operation which would effect substantial savings in operating costs, and that the Commission should refuse Railways any fare increases until it converts to busses and serves the public through a modern, efficient system. The Commission undoubtedly has the power to require a utility to render adequate and efficient service to the public at reasonable rates. At the same time the board of directors of the utility is granted discretion as to general matters of

internal management, and the line between management and regulation cannot be readily drawn. Cf. Penna. Telephone Corp. v. Pa. P. U. C., 153 Pa. Superior Ct. 316, 33 A. 2d 765. The argument of the City here, as in the previous appeal involving the 15 cent fares, relates to problems which are to a great extent within the realm of management and the Commission cannot interfere unless an abuse of discretion or arbitrary action be shown. Pittsburgh v. Pa. P. U. C., 172 Pa. Superior Ct. 230, 235, 236, 93 A. 2d 715." See, also, *Pittsburgh v. Pennsylvania Public Utility Commission,* 165 Pa. Superior Ct. 519, 69 A. 2d 844; *Pittsburgh v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 95, 78 A. 2d 35.

It was for the Commission in the first instance to decide on the record whether full conversion forthwith to buses is desirable and feasible, and secondly whether failure to do so constitutes an abuse of discretion by management to the detriment of the public. The trend definitely appears to be toward motorization, but we cannot say that the failure of Railways to convert more rapidly to buses constitutes such abuse of managerial discretion, and that the Commission should have so found. In opposing one of the many prior rate increases by Railways the City had presented the argument that the only salvation of Railways lies in converting its obsolete plant by the introduction of modern methods such as bus transportation. In sustaining the Commission in allowing the increases, we observed (*Pittsburgh v. Pennsylvania Public Utility Commission,* 172 Pa. Superior Ct. 230, 234, 93 A. 2d 715, 717) : "The solution of Railways' problem may not lie in repeated fare increases which seem to be pricing it out of the transportation field."

Trolley systems cannot ignore what may be termed modernization, and it is an acknowledged fact that the

return from every rate increase is offset to a considerable extent by decline in patronage. Increased fares are largely equalized by passenger losses. But it is for this Court to determine only whether there is reasonable and substantial basis in the proofs for the order of the Commission, although we might not agree with the permissible exercise of administrative discretion by the Commission. *Pittsburgh & Lake Erie R. Co. v. Pennsylvania Public Utility Commission*, 170 Pa. Superior Ct. 411, 425, 85 A. 2d 646. The present record does not disclose that the Commission has exercised its discretion in an arbitrary and capricious manner or failed to give proper weight to the evidence; and there is competent substantial evidence to support its order. See Public Utility Law of May 28, 1937, P. L. 1053, §§1005, 1107, as amended, 66 PS §§1395, 1437.

The City's claim that it was not afforded a full and fair hearing before the Commission is predicated upon the rulings of the Commission on the admission, exclusion, and production of evidence.

The City alleges error in that the Commission failed to require Railways to produce the operating results of its conversion program on the Millvale-Etna line. of fifteen miles where buses have been substituted for street cars. The City petitioned the Commission for an order directing Railways to submit the operating results of this line. Railways filed an answer and the Commission denied the City's request. Such data, if available, might have had some relevancy on the question of the feasibility of partial conversion to bus operation. But it does not appear from the petition and the answer that such information would be material and have probative value on the question of full conversion to buses. The data which the City sought was not assembled and required special preparation. The study would represent largely the judgment of Rail-

ways' personnel engaged in its preparation rather than the presentation of informative data. The Commission may "compel the production of such books, records, papers, and documents as it may deem necessary or proper in, and pertinent to, any proceeding, investigation, or hearing, held or had by it, . . ." Section 1009 of the Act of May 28, 1937, P. L. 1053, 66 PS §1399. The value of the requested data being questionable and not necessarily essential to a determination of the issues in the case, there was no abuse of discretion on the part of the Commission in denying the petition of the City. See *Pittsburgh & Lake Erie R. Co. v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 423, 85 A. 2d 646.

Another contention of the City is that the Commission erred in excluding the City's Exhibit "P" which was a suggested purchase plan for the acquisition of 1,000 buses at $20,000 each, or a total of $20,000,000, to accomplish conversion of Railways' system to full bus operation. While it might have been well to admit or accept in evidence this hypothetical plan for what it was worth, its exclusion does not constitute reversible error. The Commission concluded that the witness who prepared the plan was not qualified as an expert in financing capable of testifying to such a plan as that advocated, and that his knowledge of Railways' financial and operating affairs was too limited to properly permit the introduction of such plan of complete conversion. The Commission ruled, in effect, that the evidence offered was not sufficiently correlated to actual fact to be relevant.

The City also charged the Commission with having erred in refusing to admit evidence showing Railways' favorable tax position compared with transportation companies of other cities. A comparison between the taxes paid in this Commonwealth by Railways with the

taxes paid by transportation companies in cities, of other states is of little value. However, we find no merit in the City's position in this respect, as the record discloses that the City's solicitor was successful in spreading upon the record the comparative tax data.

The City also complains that the Commission failed to require Railways to reveal system wide comparative cost studies of street car versus bus operation which Railways is alleged to have made. A witness for Railways testified that many studies had been made and that they had been translated into action or are in the form of applications to the Commission. The substance of some of the studies dealing with conversion appears in the record in this and prior proceedings. The witness refused to produce the studies, but the matter was never formally presented to the Commission. The materiality and the admissibility of such surveys are questionable. The City took no action to require their production.

The presence of incompetent evidence or the exclusion of admissible evidence does not necessarily require the reversal of an order of the Commission unless the action of the Commission in ruling thereon constitutes clear error of law fatal to the order or is so arbitrary as to amount to a denial of due process. *Pittsburgh & Lake Erie R. Co. v. Pennsylvania Public Utility Commission,* supra, 170 Pa. Superior Ct. 411, 425, 85 A. 2d 646. We find no reversible error in such rulings of the Commission. The Commission had before it voluminous evidence dealing with various aspects of the conversion problem which it considered at length.

The fair value of Railways, in the determination of which actual and functional obsolescence would be a very material factor,[1] is not an issue in this appeal;

---

[1] See *Philadelphia v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 38, 51, 95 A. 2d 244.

and the net annual operating income of $1,584,674 estimated to result from the increased rates is not involved except that the City would have the Commission deny Railways any further fare increases until the Commission had made a thorough study of Railways' transportation operations.