## Pittsburgh, Appellant, *v.* Pennsylvania Public Utility Commission.

370

Argued March 28, 1955. Before Rhodes, P. J., Hirt, Ross, Wright, Woodside, and Ervin, JJ. (Gunther, J., absent).

*Robert Engel,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* for City of Pittsburgh, appellant.

*W. Russel Hoerner,* Assistant Counsel, with him *Thomas M. Kerrigan,* Acting Counsel, for Public Utility Commission, appellee.

*David Dunlap,* with him *John T. Brown,* for utility company, intervening appellee.

Opinion Per Curiam, April 18, 1955:

This matter is before us on a motion to quash appeal and answer thereto. The appeal was not taken from a final appealable order. The order in this proceeding being interlocutory, it is not reviewable under

section 1101 (a) of the Public Utility Law of May 28, 1937, P. L. 1053, Art. XI, §1101, 66 PS §1431. A further opinion will be filed at a later date.

The appeal is quashed at the costs of appellant.

OPINION PER CURIAM, July 21, 1955:

The City of Pittsburgh appealed from the order of the Pennsylvania Public Utility Commission dated January 24, 1955, at Complaint Docket Nos. 16165, 16166, 16205, 16206. The commission's order lifted a suspension of a proposed increase in rates of Equitable Gas Company previously imposed by the commission on the company's tariff supplements Nos. 38 and 7.

The commission filed a motion to quash the appeal and the company was allowed to intervene as a party appellee. To the motion to quash the city filed an answer.

The matter came on for argument before this Court on March 28, 1955. On April 18, 1955, we quashed the appeal for the reason that it was not taken from a final appealable order, and stated that a further opinion would be filed at a later date. This opinion is in accordance therewith.

The commission by its order of August 11, 1953, allowed the company a part of a proposed rate increase under tariff supplements filed January 29, 1952, and directed the company to refund to its customers the difference received under those supplements between January 1, 1953, the effective date of the increase, and October 1, 1953 (extended to November 1, 1953), the effective date of the new tariff supplements containing rates to produce the allowable revenues prescribed by the commission. The company appealed from that part of the order which directed refunds. We affirmed the commission's order. *Equitable Gas*

*Company v. Pennsylvania Public Utility Commission,*
174 Pa. Superior Ct. 450, 102 A. 2d 235.

On October 26, 1953, the company, in compliance
with the commission's order of August 11, 1953, filed
with the commission tariff supplements Nos. 37 and
6. The commission by formal action accepted these
supplements as being in compliance with its order of
August 11, 1953, and the rates contained therein be-
came effective November 1, 1953.

The city, on April 15, 1954, filed a complaint
against these supplemental tariffs which had been in
effect from November 1, 1953 . No hearing had been
held or disposition made of the complaint at the time of
argument, March 28, 1955, on motion to quash and
answer thereto.

The company, on June 10, 1954, filed with the
commission tariff supplements Nos. 38 and 7 to become
effective on August 10, 1954. These supplements were
designed to produce additional gross operating reve-
nues of $1,820,300 which would equal increases in cost
of purchased gas allowed by the Federal Power Com-
mission and the related increase in income tax.

On June 25, 1954, the company filed tariff supple-
ments Nos. 39 and 8 to become effective August 26,
1954. These supplements were designed to increase
gross operating revenues by $1,906,020 annually which
amount would be in addition to that proposed under
tariff supplements Nos. 38 and 7, filed on June 10,
1954.

The city, on July 7, 1954, filed a complaint against
both proposed increases, and the commission, on Aug-
ust 9, 1954, instituted its own investigation against
both increases.

The commission, on August 10, 1954, suspended
tariff supplements Nos. 38 and 7 for a period of six

months to February 10, 1955. Tariff supplements Nos. 39 and 8 were likewise suspended to February 26, 1955.

The company, on December 20, 1954, filed with the commission a petition to lift suspension of tariff supplements Nos. 38 and 7; the city filed an answer.

By commission action on January 24, 1955, the suspension of tariff supplements Nos. 38 and 7 was lifted, and the order issued from which this appeal was taken by the city.

The question raised on motion to quash and answer is whether the appeal was taken from an interlocutory order.

We have said that an appeal from an order of the commission which is not final and where the process of administrative adjudication had not been completed was not appealable under section 1101 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1431. *Reed v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 132, 100 A. 2d 399; *Sayre Land Company v. Pennsylvania Public Utility Commission,* 167 Pa. Superior Ct. 1, 74 A. 2d 713.

The commission's order of January 24, 1955, lifting suspension of tariff supplements Nos. 38 and 7 was interlocutory and not appealable.

The commission has the power to suspend tariffs stating new rates. Section 308 (b) of the Public Utility Law, 66 PS §1148 (b).

The exercise of this statutory power by the commission is an administrative function, and, with few exceptions, is within the commission's sound discretion. *Philadelphia v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 96, 103, 104, 63 A. 2d 391.

Exercise of the discretionary power to suspend does not preclude subsequent lifting of the suspension within the designated period. Such discretionary power to

suspend implies power to revoke the suspension during the period of suspension. There is no right to a suspension or to a continuation of a suspension. The action of the commission in suspending or not suspending proposed tariffs does not indicate commission approval or nonapproval of the rates in the tariffs, the reasonableness of which remains open for ultimate disposition. *West Penn Power Company v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 123, 130, 131, 100 A. 2d 110. The commission's order of January 24, 1955, recognizes its interlocutory nature. The commission said: "In lifting the suspension as prayed for, we are not to be understood as having made a finding that respondent is entitled to the 3.4¢ per Mcf increase now suspended to February 10, 1955. This increase would provide less than half the total increase which respondent is seeking. Our investigations . . . concerning both increases [first-step and second-step increases] will be continued with all possible expedition so that we will be in position to reach a final determination in these matters; . . ."

In *Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 391, 90 A. 2d 850, we held that successive increases in rates by filing new tariffs while a rate proceeding was still undetermined were prohibited, and that the action of the commission in allowing new tariffs to become effective and the protested tariffs to be canceled was contrary to law and could not be sustained. This case is not applicable to the present controversy. In the instant case there are not successive increases, the first of which remains undetermined.

The city argues that tariff supplements Nos. 37 and 6 filed in compliance with the commission's order of August 11, 1953, and which became effective by commission approval on November 1, 1953, were in-

valid; and that adjudication of the complaint relative thereto was required before tariff supplements Nos. 38 and 7 could be permitted to become effective.

The city assumes the illegality of tariff supplements Nos. 37 and 6. However, these were prima facie valid. By commission action they became effective November 1, 1953. The city offered no objection until April 15, 1954, when it filed a complaint of which it has not sought any disposition. Consequently, there was no pending unadjudicated increase at the time tariff supplements Nos. 38 and 7 were allowed to become effective by commission order of January 24, 1955.

Finally, the commission's action did not constitute denial of procedural due process. There was no substantive right in the city to have the rates suspended. Under section 308 (b) of the Public Utility Law, 66 PS §1148 (b), a hearing is not always required; a statement, however, of the reasons for the suspension is to be given to the public utility affected. We agree with the commission that ordinarily, as a matter of discretion, it may suspend or lift a prior suspension or, on filing of tariffs, permit rates to become effective pending hearing and decision concerning the lawfulness of such rates. In this respect the power of the commission is not without limitation; abuse of administrative power is always subject to judicial review. See *Pennsylvania State Athletic Commission v. Bratton*, 177 Pa. Superior Ct. 598, 606, 112 A. 2d 422; *Pittsburgh v. Pennsylvania Public Utility Commission*, supra, 171 Pa. Superior Ct. 391, 90 A. 2d 850.

For the reasons above set forth, appeal No. 89, April Term, 1955, from the commission's order of January 24, 1955, was quashed.