# Wagner et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued November 17, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Lawrence F. Flick,* with him *John B. Taulane,* for appellant.

*Raymond E. Larson,* for township, appellant.

*John E. Forsythe,* for township, appellant.

*William A. Goichman,* Assistant Attorney General, with him *Joseph C. Bruno,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*John F. Cramp,* with him *Cramp and D'Iorio,* for intervenor, appellee.

OPINION BY ERVIN, P. J., December 16, 1966:

These appeals are from the consolidated order of the Pennsylvania Public Utility Commission, dated June 27, 1966, granting applications of the Philadelphia Suburban Transportation Company for permission

(1) to abandon street railway service on its Ardmore Division and (2) substitute motor bus service therefor. The Ardmore Division extends from the 69th Street Terminal of the Philadelphia Transportation Company, Upper Darby, Delaware County, to a westerly terminus in Ardmore. In general, the Ardmore Division consists of a private right of way in the middle of West Chester Pike to Llanerch, then between Darby Road and East Darby Road to Turnbull Avenue, then over a private right of way and certain streets to the Ardmore Terminal. Except for a short distance where the trolley runs in the bed of the streets near the Ardmore Terminal, this latter segment of the private right of way is to be paved and used by the buses, and apparently will not involve competition with vehicular traffic on the public streets. The proposed substituted bus service parallels, generally, the street railway service, but, with the exception beyond Turnbull Avenue just mentioned, would involve use of the public highways, rather than the private right of way.

At hearings on the application, testimony in opposition to that of the applicant was produced by the Township of Haverford, Pennsylvania Department of Highways, William Wagner and other individuals. Following argument, the commission, by its order of June 27, 1966, approved the applications as "necessary or proper for the service, accommodation, convenience, or safety of the public." Appeals were taken to this Court by William Wagner, the Township of Haverford and the Township of Lower Merion. The Department of Highways did not appeal.

Appellants' main attack is that there was lack of substantial evidence to support the commission's finding that approval of the applications was necessary for the service, accommodation, convenience and safety of the public. Our scope of review is limited: *Dublin Water Co. v. Pa. P.U.C.*, 206 Pa. Superior Ct. 180, and

cases cited at p. 187, 213 A. 2d 139; §1107 of the Act of May 28, 1937, P. L. 1053, 66 PS §1437.

Although the evidence was conflicting we are of the opinion that the order of the commission here is supported by substantial evidence. The question whether a street railway transportation system should convert parts of its service to buses involves, initially, discretion on the part of management; it is for the commission to decide whether management has abused its discretion and whether the conversion to buses is in the public interest: *Pittsburgh v. Pa. P.U.C.,* 172 Pa. Superior Ct. 230, 235, 236, 93 A. 2d 715 (1953); *Pittsburgh v. Pa. P.U.C.,* 174 Pa. Superior Ct. 224, 228, 229, 101 A. 2d 127 (1953).

In *Commuters' Committee v. Pa. P.U.C.,* 170 Pa. Superior Ct. 596, 604, 605, 88 A. 2d 420 (1952), we set forth the factors to be considered in cases involving abandonment of train service, and substitution of bus service as (1) the extent of the loss on the branch line and its relation to the carrier's entire operation, (2) use by the public, present and future, (3) relation of the carrier's loss to the public inconvenience upon discontinuance of service and (4) the adequacy of the substituted service. However, a clear factual distinction exists between cases involving abandonment of interurban train service (and substitution of bus service) and those concerning a changeover from street railway to bus service. As we shall see, the present service of applicant is not a through high speed line, but has some aspects of ordinary street railway service because it involves 47 street intersections.

The testimony as to the public necessity to abandon rail service and convert to buses here, was conflicting. Applicant's evidence showed a loss on the Ardmore Rail Division of $40,917.00 for 1964 and a saving by substitution of buses of $29,350.00 annually. Opposed to this, Haverford Township's witness Tennyson esti-

mated applicant made a profit of $9,000.00 on the Ardmore Rail Division and that substituted bus service would cost $6,385.00 more than the existing rail service. The bus schedule is to be identical with the present rail service and the commission found that service will be improved by buses which will give greater flexibility in scheduling during peak and off-peak hours. Mechanical failure ties up the entire rail line, while a bus merely delays itself. Admittedly Darby Road (18 feet wide) is narrow and inadequate to handle even the existing traffic load. Presently there are four buses on Darby Road, in both directions, each hour and the instant application would add another four buses in each direction every hour. However, it also appears that the abandonment of applicant's right of way along Darby Road would make the right of way available to the Department of Highways for conversion of that road into a four lane highway. The commission found that "the addition of two motor buses every 15 minutes" will not "appreciably compound the congestion" and that the carrier need not continue operations at a loss because of "antiquated highway facilities." Applicant is now certificated for bus transportation over 65% of the present route, through other certificates and routes.

In the event that applicant removes its service facilities from Llanerch to 69th Street (estimated to be done within two years), the right of way could be used, if condemned, to widen West Chester Pike. The commission found that the buses proposed would be of a luxury type and would provide more comfortable service. The last rail car was purchased in 1949; rebuilt replacements would cost in excess of $60,000.00. The prospect of obtaining new rail cars is dim, and the repair of the old cars costly. In general, buses will unload and pick up passengers at the curb, while rail passengers must cross the street and dodge traffic to

reach the curb. The commission further found that safety conditions would be improved by the elimination of 47 grade crossings.

As the commission states in its brief, "The general question of public preference for buses or trolleys is an open one." Each form of transportation has its advantages and disadvantages. Appellants introduced a great deal of evidence purporting to show that the rail line is preferable to buses in the matter of safety, service and accommodation of the public. The capacity of the trolleys is 90, with a seating capacity of 60; the buses 57 with a seating capacity of 45; the aisles and seats in the trolley are wider. Under appellants' estimates the buses take more time to cover the route in question. Buses emit fumes, are less reliable in snowy weather, are more subject to traffic accidents and would add to the traffic congestion already existing on Darby Road. Bus schedules would be more difficult to maintain in congested highway traffic.

Counsel for appellants, including Lower Merion Township, point to the fact that cities are presently turning to high speed rail lines as a method of solving transportation difficulties. This fact is undoubtedly true. However, the present rail line, though it operates largely over its own right of way, runs in the middle of the street, and, with 47 grade crossings, has some of the characteristics of an ordinary street railway, as opposed to a high speed rail line. The present appeal is in many respects similar to *Phila. v. Pa. P.U.C.*, 185 Pa. Superior Ct. 598, 607, 138 A. 2d 698 (1958), where this Court approved the commission's order permitting abandonment of street railway service from Philadelphia to Willow Grove, and the substitution of bus service. In that appeal, however, the commission's order was conditioned upon the widening of a narrow highway (Edge Hill Road) by the Department of Highways. There, as here, the evidence was conflicting on

the question of public necessity for the changeover from rail transportation to buses, and this Court stated (185 Pa. Superior Ct. 598 at p. 607) : " 'The weight to be given evidence and conflicts in testimony are matters exclusively for the commission, the fact finding body, to determine' : Lyons Transp. Co. et al. v. Pa. P.U.C., 163 Pa. Superior Ct. 335, 337, 338, 61 A. 2d 362." See also *Pittsburgh Rwys. Co. v. Pa. P.U.C.,* 198 Pa. Superior Ct. 415, 427, 428, 182 A. 2d 80 (1962). The commission here resolved the conflict and made a finding that the granting of the applications would be in the public interest; its finding is supported by evidence and must be affirmed.

Appellant Wagner, as an individual user, attempted to introduce evidence showing a traffic count without designating the dates on which it was taken. The count included only one inbound and one outbound car per day. Upon objection the examiner excluded this testimony and exhibit as not sufficiently probative. Mr. Wagner did not take steps to raise the question of the exclusion of the testimony before the commission. Since the question was not raised below, it is not properly before the Court: *Lang v. Pa. P.U.C.,* 207 Pa. Superior Ct. 312, 319, 217 A. 2d 750 (1966). In any event, the error, if any, was harmless, as the evidence was merely cumulative. The same considerations apply to the attempt of Mr. Wagner's counsel to call Haverford Township's witness, Mr. Tennyson, as an expert witness on Mr. Wagner's behalf.

Assuming the application for bus service is granted and approved, counsel for Lower Merion Township states that the township officials and applicant agree on a substitution of School Lane for West Athens Avenue in the Ardmore Terminal Loop.

The order of the commission is affirmed, and the record remitted to the commission, with directions to amend the certificate in the respect indicated, as agreed upon by the parties.